[Civ. No. 25856. Second Dist., Div. Four. Oct. 10, 1962.]

BARCLAY KITCHEN, INC., Plaintiff and Respondent, **v.** CALIFORNIA BANK, Defendant and Appellant.

Swanwick, Donnelly & Proudfit and Donald O. Welton for Defendant and Appellant.

Voegelin, Barton, Harris & Callister, Gary E. Gunderman and E. Talbot Callister, for Plaintiff and Respondent.

BURKE, P. J.—Plaintiff-respondent Barclay Kitchen, Inc. (Barclay) by amended complaint sued and recovered judgment against defendant-appellant California Bank (Bank) and National Surety Corporation (Surety) for over $11,000

in losses resulting from the defalcations of Thelma T. Gianopulus, a trusted employee of Barclay. Surety takes no part in this appeal.

Mrs. Gianopulus was a "one-man office" for Barclay. She acted as purchasing agent, bookkeeper, and performed other incidental duties. She was authorized to make deposits in Barclay's account with Bank and to withdraw up to $1,000 cash each week for use as change in the business over the weekend. These withdrawals, which were usually made in the amount of $900 per week, were to be redeposited to the account on the first banking day after the weekend. Mrs. Gianopulus failed to redeposit many of these $900 weekly cash withdrawals and fraudulently appropriated these sums to her own use.

To cover her defalcations, Mrs. Gianopulus deposited in Barclay's account on December 19, 1957, a Diners' Club check payable to Barclay in the amount of $4,260.48, along with $795.50 in cash. Bank accepted deposit tickets prepared by her indicating four separate deposits of $900 each and one deposit of $1,455.98. Similar transactions occurred on March 19, 1958, and on April 23, 1958.

Bank accepted the deposits in this form upon Mrs. Gianopulus' representation that it was necessary "for bookkeeping purposes."

The posting of deposits by Bank to depositors' statements of account is on the basis of individual deposit tickets. If several items are listed on one ticket, that sum is posted to the account; if each item is listed on a separate ticket, it is posted individually to the account. This is a customary and acceptable practice of Bank. However, by permitting Mrs. Gianopulus to submit several deposit tickets for the deposit of a single check, the resultant posting to the account misrepresented the single deposit as being several individual deposits in amounts corresponding to the amounts of change withdrawals. The inaccurate rendition of these deposits on the statement of account is the claimed basis of the Bank's liability.

The deposit slips themselves serve only as a preliminary step in the negligent act of Bank. Viewed alone the slips did not cause the loss because Barclay did not require duplicates and the originals were not seen by Barclay's accountants before the losses were discovered. However, acceptance of the deposit slips in the form in which Mrs. Gianopulus made them out caused the deposit amounts to be posted to Barclay's

statements in a manner which misled Barclay to believe that certain statement credits were cash redeposits when in fact they were portions of Diners' Club checks. Therefore, viewed as a whole the deposit slips and the resulting postings to Barclay's statements combined as a cause in misleading Barclay, permitting Mrs. Gianopulus to carry out her scheme of defalcation.

Barclay's internal bookkeeping system also aided Mrs. Gianopulus to conceal her thefts. Testimony for Barclay indicated that meals purchased by customers of plaintiff on Diners' Club cards would be entered on the cash receipts journal and then posted to accounts receivable under Diners' Club. Mrs. Gianopulus never posted the receipt of the Diners' Club check of December 1957. She posted the Diners' Club checks involved in the second and third transactions in amounts respectively $1,800 less than the actual amounts of the checks. The effect of Mrs. Gianopulus' posting in this manner was to indicate on the books that more money was due from the Diners' Club than actually was owed, thereby reconciling her company books with the actual amounts she had deposited in the bank.

The discrepancy between the amounts paid by Diners' Club and the amounts owed by it were not readily apparent because Barclay closed its books at the end of the month, but the Diners' Club closed its books on the 24th of each month. This meant there was always an outstanding balance due from the Diners' Club, being the amount accruing from the 24th to the end of the month, plus the amount of the prior month. The difference could not be learned from the Diners' Club because they did not confirm balances owed by them.

Additionally, one McGee, Barclay's accountant who examined the books monthly, testified that in reconciling the bank statements, Mrs. Gianopulus represented to him that the $900 items in the three transactions were redeposits of weekend withdrawals; that the books and records so indicated; that he treated them as such and that the books balanced.

The court gave judgment on the theory of negligence against Bank for $11,467.67, the full amount of Barclay's loss. Judgment against Surety was $4,013.86, the amount of liability under its fidelity bond, but that amount is to be reduced by any recovery from Bank exceeding $7,453.81, the difference between the total loss and Surety's liability on the basis of subrogation. Only Bank has appealed from the judgment in favor of Barclay.

On appeal Bank raises two primary questions:

1. Whether or not Bank was justified in assuming that, because of her position with Barclay, Mrs. Gianopulus had authority to make the deposits in the manner indicated thereby estopping Barclay from contending Bank caused its loss.

2. Whether or not the acts of Bank in accepting deposits of a single check as several separate deposits was a breach of duty owed Barclay and a legal cause of Barclay's loss.

As subsidiary points Bank also contends:

3. The action is barred by laches because Barclay did not report irregularities in the bank statement as prescribed by bank rules.

4. As between Bank and Surety, Surety should bear the loss because the doctrine of subrogation does not apply in favor of a surety on a fidelity bond except against persons who participated in the wrongful act of the principal.

As to whether Mrs. Gianopulus had ostensible authority to represent deposits of single Diners' Club checks as several separate and distinct deposits of cash, the question must be answered in the negative. To establish ostensible authority in an agent, it must be shown that the principal, intentionally or by want of ordinary care, has caused or allowed a third person to believe the agent possesses such authority. (Civ. Code, § 2317; *Hill* v. *Citizens Nat. Trust & Sav. Bank,* 9 Cal.2d 172, 176 [69 P.2d 853].) Here it is contended that by virtue of her position as bookkeeper and general office manager, which included the express authority to make deposits in plaintiff's bank account, no limit would impliedly be placed on the manner in which Mrs. Gianopulus made the deposits. While it is true that she did have authority to make deposits, and incidentally to fill out deposit tickets, that authority did not extend to making out deposit tickets which inacurrately reflected the nature of the deposit.

Bank has not shown how the form of deposits accepted in this case were in any way necessary to the performance of Mrs. Gianopulus' duties with Barclay. The officers of Bank who approved the deposits testified that the procedure employed here by Bank employees was irregular and contrary to policies and procedures of Bank. While it is true that Mrs. Gianopulus told Bank employees that the mode of deposit was "necessary for bookkeeping purposes," it is elementary that an agent's authority cannot be delineated by his own representations. (*Boren* v. *State Personnel Board,*

37 Cal.2d 634, 643 [234 P.2d 981]; *Torrance Nat. Bank* v. *Enesco Fed. Credit Union,* 134 Cal.App.2d 316, 322 [285 P.2d 737].) This rule is not changed when the relationship of the parties is bank and depositor (*Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 46-47 [124 P. 704, 41 L.R.A. N.S. 529]); and where the depositor is a corporation the bank has a legal duty to ascertain that the acts of the agents of the corporation are authorized. (*Torrance Nat. Bank* v. *Enesco Fed. Credit Union, supra,* p. 327.) Having accepted the deposits in question, admittedly irregular, without some effort to ascertain the agent's authority beyond her own representations, Bank cannot now absolve itself from liability by asserting an ostensible authority in the agent where in fact no authority was given.

Additionally it may be noted that the issue of ostensible authority is a question of fact. (*Henry Cowell Co.* v. *Santa Cruz Bank,* 82 Cal.App. 519, 522 [255 P. 881].) Here the trial court found, upon substantial evidence, that there was no ostensible authority.

Bank asserts that there is no evidence in the record to support a finding that acceptance by Bank of these irregular deposits "were in violation of its contract of deposit with plaintiff and were in violation of the written instructions given to and accepted by said Bank as set forth aforesaid."

The relationship of bank and depositor is founded on contract. (*Allen* v. *Bank of America,* 58 Cal.App.2d 124, 127 [136 P.2d 345].) The contract entered into when a depositor opens a general checking account at a bank is usually an implied one. (See *Glassell Dev. Co.* v. *Citizens Nat. Bank,* 191 Cal. 375, 379 [216 P. 1012, 28 A.L.R. 1427]; 7 Am.Jur. 286.) Custom and usage in the business of banking may be part of a contract of deposit if such custom or usage is reasonable and does not contravene any principle of law. (See *Davis* v. *First Nat. Bank of Fresno,* 118 Cal. 600, 602 [50 P. 666].)

In the case at bar the trial court found that "the contract of deposit existing between plaintiff and said Bank required, among other things, that said Bank render to plaintiff a true and accurate statement and account of all transactions in connection with said commercial banking account." Bank does not seriously dispute this element of its contract with Barclay, but argues that it has not been violated. This contention cannot be sustained. Bank impliedly promised to keep accounts according to usual customs and procedures and

render statements of account in accordance therewith. The testimony of Mr. Marcoux and Mr. Jones noted above shows that those procedures were not followed. Upon learning of the first transaction Mr. Marcoux instructed the teller involved not to accept future deposits in this form, yet on two more occasions such deposits were accepted. Since the effect of this irregular procedure was to render inaccurate statements in Barclay's account of deposits, it must be held that defendant acted negligently in performing its duty to render faithful and accurate accounts under the contract of deposit with plaintiff.

Bank next contends that even if acceptance of deposits from Mrs. Gianopulus in the manner described was a negligent breach of the contract with its depositor Barclay, its negligence was not the proximate cause of Barclay's loss. In this regard Bank raises two points : (1) Bank's conduct did not in fact cause the loss and (2) even if that conduct was such a cause, the intervening criminal acts of Mrs. Gianopulus' embezzlement supersede Bank's negligence.

(1) Was Bank's conduct in fact a cause of Barclay's loss?

The rule is that defendant is not liable for plaintiff's injury unless in fact he causes the injury. "The whole doctrine of responsibility for negligence is based upon the postulate that without such negligence the injury would not have occurred, . . ." (*Osborn* v. *City of Whittier,* 103 Cal.App.2d 609, 616 [230 P.2d 132] ; *McVay* v. *Central Cal. Inv. Co.,* 6 Cal.App. 184, 188-189 [91 P. 745].) The test for determining cause in fact has been clearly articulated in Prosser, Torts (2d ed.) page 218 :

"If the defendant's act or omission was a substantial factor in bringing about the result, it will be regarded as a cause in fact. Ordinarily it will be such a substantial factor if the result would not have occurred without it.

"The plaintiff is not required to establish the fact of causation with absolute certainty. It is sufficient that he introduces evidence from which reasonable men may conclude that it is more probable that the defendant's conduct was a cause than that it was not."

California cases are in accord with this statement. (*Woo* v. *Martz,* 110 Cal.App.2d 559, 563 [243 P.2d 131] ; *Gibson* v. *Garcia,* 96 Cal.App.2d 681, 685 [216 P.2d 119].)

The primary cause of Barclay's loss clearly was Mrs. Gianopulus' thefts. She was enabled to conceal her scheme over a period of time because Diners' Club billings

were not checked against receipts from the Diners' Club. But, taking the inference in the record most favorable to respondent, as we must (*Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631, 633 [67 P.2d 678] ; *Arthur* v. *Santa Monica Dairy Co.*, 183 Cal.App.2d 483, 485 [6 Cal.Rptr. 808]), the Bank's negligence also aided the concealment. Under the accounting method employed by Barclay, the accountant testified that he relied upon the rendition of individual deposits in the statement to correlate receipts and disbursements. The court found that the statements "misled plaintiff so as to enable said Thelma T. Gianopulus to fraudulently appropriate the moneys of plaintiff as described [above]." The issue of actual cause is one of fact for the trier. (*Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal.App.2d 578, 603 [271 P.2d 122].) Since there is substantial evidence in the record to show the thefts would have been discovered but for the bank's negligence, that negligence was a substantial factor in causing the loss and therefore must be regarded as a cause in fact of the loss.

 Defendant's negligence need not be the sole cause of an injury to establish liability. Where the act complained of is a substantial contributing factor it is sufficient. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 234 [282 P.2d 69] ; *Westover* v. *City of Los Angeles,* 20 Cal.2d 635, 639 [128 P.2d 350].) But this rule is further qualified: The defendant's act must also be a legal or proximate cause of the plaintiff's injury. (*Champion* v. *Bennetts,* 37 Cal.2d 815, 821 [236 P.2d 155].)

 Bank contends that its negligence was a prior and remote cause of Barclay's loss; that its negligence is superseded by Mrs. Gianopulus' criminal acts and for that reason it cannot be held liable. While intervening criminal acts in some cases may supersede the defendant's negligence, the test is whether the actor should have realized at the time of his negligent conduct that there was a likelihood that as a result thereof a third person might commit an intentional tort or crime. (*Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 218 [157 P.2d 372, 158 A.L.R. 872] ; *Terrell* v. *Key System,* 69 Cal. App.2d 682, 688-689 [159 P.2d 704].) The defendant need not foresee the precise injury or the exact manner in which it occurs. (*Terrell* v. *Key System, supra.*) It is sufficient if the result is within the ambit of risk created by defendant.

 Bank officers here testified to their knowledge of the part the bank statements played in forming the protective

aspect of plaintiff's accounting. Defalcations of dishonest employees is one of the risks the system is designed to guard against. The duty of Bank to render accurate statements contemplates this aspect of protection. Since Bank knowingly permitted the irregular procedures, it cannot now be heard to say that breach of its duty under the circumstances in this case would not foreseeably have an effect like that actually caused.

However, we fail to perceive how the Bank could be held responsible for any loss occurring *prior* to any negligent conduct on its part which improperly represented a deposit thus shielding Mrs. Gianopulus' defalcation. Plaintiff declares that the deposit negligently accepted on December 19, 1957, resulted in an inaccurate statement at the time when Mrs. Gianopulus' thefts should have first been discovered. Yet in its complaint plaintiff alleges that Mrs. Gianopulus' thefts commenced sometime after April 30, 1957, nearly eight months before Bank's first negligent act. It cannot be said that Bank was responsible in any way for the prior losses. Since judgment was given against Bank for the whole amount of Barclay's loss, we must reverse the judgment on the issue of damages with instructions to the trial court to determine the amount of loss sustained by Barclay after the negligent conduct of Bank.

The Bank's contention that Barclay's delay in failing to discover errors in the statements bars this action because of laches is without merit. The provision requiring the depositor to notify Bank with regard to errors does not apply in this case where the error or irregularity cannot be ascertained from the face of the statement. (See *Basch* v. *Bank of America*, 22 Cal.2d 316, 326 [139 P.2d 1] ; *Sommer* v. *Bank of Italy etc. Assn.*, 109 Cal.App 370, 375 [298 P. 98].) Here the statement conveyed no intimation of the irregular procedure of Bank.

As a final point Bank argues that as between Bank and Surety, Surety should bear the loss; that the right of subrogation does not exist in favor of a surety on a fidelity bond except against persons who participated in the wrongful act of the principal.

But in the present case, unlike the cases cited by Bank, Bank is not an innocent third party. In *Meyers* v. *Bank of America*, 11 Cal.2d 92 [77 P.2d 1084], the court held the surety liable as against the bank where the bank, not being a wrongdoer, paid money in the ordinary course of its busi-

ness upon checks, the genuineness of which it had no reason to doubt, and from which it received no benefits. Here, Bank was not innocent. Its negligence made possible the consummation of Mrs. Gianopulus' fraudulent scheme. Its employees admittedly departed from the "ordinary course" of their banking business. They should have been alert to Mrs. Gianopulus' misrepresentation of authority.

Bank argues that subrogation also was not allowed in *Liberty Mutual Ins. Co.* v. *Kleinman*, 149 Cal.App.2d 404, 407 [308 P.2d 347], but there it is expressly pointed out that the third person's conduct was not considered negligent.

Under the circumstances here the court properly subrogated Surety to the rights of Barclay. However, it should be noted that Surety will be liable without set-off against Bank for such portion of the losses determined on retrial not to be attributable to Bank's negligence to the extent such losses are covered by the fidelity bond.

The judgment is affirmed as to Bank's liability and reversed on the issue of damages with directions to determine the amount of damages actually caused by Bank's negligence in accordance with this decision. Costs on appeal shall be borne by Bank.

Jefferson, J., and Ford, J.* concurred.

A petition for a rehearing was denied October 26, 1962, and appellant's petition for a hearing by the Supreme Court was denied December 5, 1962. White, J.,† participated therein.

---

*Assigned by Chairman of Judicial Council.

†Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.