251 So.2d 316 (1971)
FLAMINGO DRIFT FISHING, INC., Appellant,
v.
L.H. NIX et al., Appellees.
No. 70-458.
District Court of Appeal of Florida, Fourth District.
August 13, 1971.
*317 G.E. Hartwig, Fort Lauderdale, for appellant.
Stephen W. Toothaker, of Berryhill, Avery Schwenke, & Williams, Fort Lauderdale, for appellee Everglades Bank & Trust Co.
SACK, MARTIN, Associate Judge.
This is an appeal by the plaintiff in the court below from an adverse final judgment, consequent upon a directed verdict in favor of the appellee, Everglades Bank and Trust Company.
The appellant sued L.H. Nix, Pembroke Huckins, and the Bank alleging, by various amendments, that the defendants were guilty of negligence in the construction of a fishing vessel for the plaintiff. A verdict of not guilty was also directed for the defendant Pembroke Huckins, but appellant raises no question as to this. The jury found against Nix, both for compensatory and punitive damages.
The evidence showed, without substantial conflict, that Flamingo Drift Fishing, Inc., entered into a contract with L.H. Nix, of St. Augustine, Florida, for the construction of a fishing vessel, in accordance with specifications contained in the contract, and partial payments to be made by Flamingo at certain stages of the construction. The construction contract contained no mention of inspection or certification by a marine surveyor; and the president of Flamingo, one Evans, had substantial knowledge of the construction requirements of a fishing vessel. Other than the specifications, there was no mention of any plans, nor were any plans ever prepared. After making the first three payments, aggregating $9,500, Flamingo applied to the Bank for a construction loan, and the Bank and Flamingo entered into a loan agreement.
This agreement provided, inter alia:
"7. Borrower agrees to employ the services of a Marine Surveyor to be paid for by the Borrower to provide the certifications, the surveys, and the statements required by this Agreement, or the shipbuilding contract, Exhibit 1, and Borrower shall require the said Marine Surveyor's Certificate as to the progress of construction and approval of each requisition as hereinafter provided before making any disbursements from the construction fund." (emphasis supplied.)
It further provided that payments were to be made upon certificate of the marine surveyor, including final payment upon certification by the surveyor that the vessel was seaworthy in accordance with the plans and specifications.
Flamingo suggested the name of a local surveyor in Fort Lauderdale, who refused to accept the assignment, pointing out that since the vessel was to be constructed in St. Augustine, it would be more expedient and cheaper to employ a surveyor in that vicinity, and recommended Pembroke Huckins, whereupon the Bank engaged Huckins. Huckins at some later date advised the Bank that upon completion of construction he would be drawing plans for Nix for future duplication of the vessel; but, notwithstanding, the Bank was willing to accept Huckins, and to disburse the loan proceeds in accordance with the construction contract schedule. After accepting delivery, Flamingo discovered the vessel was not seaworthy, and was required to expend sums of money to make the vessel seaworthy and comply with Coast Guard regulations.
The gravamen of the claim of negligence against the Bank was that it employed Huckins, with knowledge of a possible conflict of interest due to his engagement by Nix for the subsequent preparation of plans.
The issue, as we see it, is whether the employment of a surveyor was for the benefit of the Bank or Flamingo, in the *318 light of all the circumstances and the terms of the loan agreement. If for the benefit of the Bank, then it clearly could waive any possibility of a conflict of interest, and particularly so since there was no allegation that Huckins was incompetent or conspired with Nix to perpetrate a fraud on either Flamingo or the Bank.
The evidence is also undisputed that Evans, Flamingo's president, made frequent trips to St. Augustine to note the progress of construction, and approved in writing at least the first of the Bank's disbursements. Since Flamingo insisted on no provisions in the construction contract for the employment of a surveyor, it would have been required to make the installment payments as the various states of construction were reached, without the benefit of any certification. The requirement for a surveyor only appeared when the Bank's money was involved, and is similar to like provisions for an architect's certificate for building construction loans.
The loan proceeds were deposited in a special escrow account, subject to the terms of the Bank's agreement; and, by the terms of paragraphs 5 and 6 of the loan agreement, the borrower agreed to supervise the construction of the project without charge or deduction for such service, and covenanted to take all necessary steps and actions to assure and accomplish the completion and performance of the shipbuilding contract.
It seems clear to us, as it did to the trial judge, that the loan agreement imposed no obligation on the Bank towards Flamingo with respect to the employment of a marine surveyor, and there was no evidence to submit the cause to a jury, on the issues as framed.
Accordingly, the judgment appealed from is affirmed.
WALDEN and MAGER, JJ., concur.