376 So.2d 243 (1979)
GULFSTAR, INC. and Steven B. Lazzara, Jointly and Severally, Appellants,
v.
ADVANCE MORTGAGE CORPORATION, Appellee.
No. 78-1998.
District Court of Appeal of Florida, Third District.
September 18, 1979.
Rehearing Denied November 13, 1979.
*244 Robert F. Nunez and James E. Deakyne, Jr., St. Petersburg, for appellants.
William A. Ingraham, Jr. and Bertram Sapurstein, Miami, for appellee.
Before PEARSON, BARKDULL and HUBBART, JJ.
BARKDULL, Judge.
Gulfstar, Inc. and its vice-president, Steven B. Lazzara (the only remaining defendants),[1] appeal a final judgment awarding a finance company $102,900.00 on an alleged negligence claim, finding no negligence on the part of the plaintiff, Advance Mortgage Corporation (hereinafter referred to as "Advance").
From the record, it appears that Gulfstar, which is in the business of manufacturing yachts, sold the "Yankee Doll" and the "Windsong" to Charles Underwood, d/b/a Underwood Marine (hereinafter referred to as "Underwood"), who is a boat dealer. Underwood then sold these boats to Underwood Marine Corporation (hereinafter referred to as "Marine Corp."), with the latter financing the purchase price through Advance. Marine Corp. is not a boat dealer, but rather primarily a real estate holding company.
In April of 1974, Gulfstar sold the "Yankee Doll" to Underwood and was paid in full, whereupon Gulfstar sent to Underwood *245 the Manufacturer's Statement of Origin (MSO) and the Master Carpenter's Certificate (MCC). Underwood then informed Gulfstar that the MSO and the MCC had been lost, and requested new ones; Gulfstar sent duplicates of the originals, but the papers were not marked as duplicates. Five weeks later, Gulfstar received a letter from Advance, whereby Advance notified Gulfstar that it had a lien on the yacht by buying the retail installment contract between Underwood and Marine Corp., and requested that Gulfstar notify it of any requests for additional certificates. Gulfstar did not receive any additional requests from Underwood in reference to the "Yankee Doll" after the letter from Advance and it did not notify Advance of the previous request and issuance of the duplicates.
The transactions concerning the "Windsong" occurred in September of 1974. Early in that month, Advance notified Gulfstar that it also had a lien on this yacht and asked that no duplicate documents be issued. Five days later, Gulfstar sold the yacht to Underwood and received full payment, and issued the original MSO and MCC. No other duplicates were issued by Gulfstar, but someone forged duplicate documents on Gulfstar stationery and Coast Guard forms. With two sets of documents in hand, Underwood or Marine Corp. used the duplicates and the forged papers to arrange financing with Advance and simultaneously, or shortly thereafter, sold the yachts with original papers to two bona fide purchasers, individuals who are not involved in this case.
Advance did not buy the retail installment contracts or "paper" from Gulfstar but from Underwood Marine; thus, there was no privity between the manufacturer and the lender. The MSO and MCC are not certificates of title, though they are necessary to obtain title from the State and to register with the Coast Guard. Although Advance told Gulfstar that it had a lien, it never did; in fact, Advance collaborated with Underwood and Marine Corp. to avoid titling the boats. Advance agreed not to title the boats or document them with the Coast Guard, so that the mortgagors would not have to pay title tax and so that Marine Corp. (which was not a "boat dealer") could later sell the boats as new vessels even though they had been used. Since Advance agreed to this procedure, it could not file a title lien or a preferred ship mortgage, which procedure would have protected its security interest. In return, Advance was able to finance the Underwood to Marine Corp. sale rather than the Gulfstar to Underwood sale, and charge a higher interest rate against the corporation, which would have been usurious against the individual.
Marine Corp. defaulted on the notes and mortgages, which caused Advance a loss in excess of $100,000.00. Advance then filed an action seeking damages for alleged negligence of the defendants, Gulfstar and its agent, Lazzara. There were other counts in the second amended complaint, but it was clear from the final judgment and the post-trial rulings that the plaintiff, prevailed only on the negligence counts, and therefore, by implication, the court found for the defendants on the other causes of action and no cross-appeal has been filed as to these rulings by the trial court.
Gulfstar and Lazzara perfected this appeal and, among their points, urge: (1) that the trial court erred in failing to grant their motions to dismiss and, (2) that the trial court erred in failing to render a judgment in their favor under the evidence.
First, we find absolutely no basis for a judgment against the corporate agent; there were insufficient allegations in the second amended complaint to make him liable as an individual; secondly, the proof did not establish any such liability as an individual. Therefore, the judgment as to the corporate agent should be reversed. Bodin Apparel, Inc. v. Superior Steam Service, Inc., 328 So.2d 533 (Fla. 3d DCA 1976).

"YANKEE DOLL"
The complaint failed to allege any privity between Gulfstar and Advance; the documents on this vessel had all been forwarded to Underwood prior to any notifications from Advance. There was no duty *246 owed to Advance by Gulfstar which was breached. Therefore, the second amended complaint was subject to dismissal on this ground and the evidence failed to establish any duty or breach thereof. Judgment should have been for the defendants. Yaeger v. Tolin, 277 So.2d 61 (Fla. 3d DCA 1973). See: Flamingo Drift Fishing, Inc. v. Nix, 251 So.2d 316 (Fla. 4th DCA 1971). Compare: A.R. Moyer, Inc. v. Graham, infra; Kovaleski v. Tallahassee Title Co., infra. Further, the acts of Underwood, in selling the vessel and pledging it as collateral, constituted a criminal act which was an intervening cause of any loss to Advance, which intervening criminal act breaks any chain of foreseeability (even if one had existed, which we do not find) of loss occasioned by Gulfstar having issued the duplicate documents. Lingefelt v. Hanner, 125 So.2d 325 (Fla. 3d DCA 1960). See: Kwoka v. Campbell, 296 So.2d 629 (Fla. 3d DCA 1974). Therefore, no judgment for the amount of this financing should have been awarded.

"WINDSONG"
Without conceding that there was a duty from Gulfstar to Advance which was breached, any loss suffered by Advance on the financing between Underwood and Marine Corp. was occasioned by the intervening criminal acts of pledging and selling (the same collateral as in the "Yankee Doll" matter), and the further criminal act of presenting forged documents by Underwood and Marine Corp. to Advance. Therefore, no judgment for the amount of this financing should have been awarded.
In passing, we note that Advance although it could have perfected valid liens against these vessels elected not to do so. In fact, it did not have liens on the vessels when it notified Gulfstar that it had such. Advance also knew that Underwood and Marine Corp. were closely related, with both being controlled by Charles Underwood, and that Marine Corp. was not a "boat dealer" per Section 371.021(12), Florida Statutes (1974 Supp.). The vessels should have been titled in accordance with Sections 371.041, 371.76(1), Florida Statutes (1974 Supp.) when the purported sales between Underwood and Marine Corp. were made. By its own actions, Advance failed to perfect its liens and the subsequent losses were caused by its own affirmative election not to comply with statutes which were enacted to protect such a compensated finance company.
The appellee relies heavily on the three cases of Schwartz v. American Home Assurance Co., 360 So.2d 383 (Fla. 1978); Vining v. Avis Rent-A-Car, Inc., 354 So.2d 54 (Fla. 1977); Nicholas v. Miami Burglar Alarm Co., Inc., 339 So.2d 175 (Fla. 1976), wherein the courts have carved out exceptions to the normal rule that a party is not liable for an intervening criminal act in negligence. The rule has been that a criminal act is an intervening cause of a loss which is not foreseeable to a party. Bryant v. Atlantic Car Rental, Inc., 127 So.2d 910 (Fla. 2d DCA 1961); Lingefelt v. Hanner, supra. In each of the cases cited by the appellee, the complaints alleged foreseeable criminal activity and the proof established such. There were neither allegations to that effect in the instant case nor did the proof establish any such foreseeability. Therefore, we find these cases not to be applicable.
Appellee also urges that there was privity between Gulfstar and Advance or a duty owed because of reasoning found in A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973); Kovaleski v. Tallahassee Title Co., 363 So.2d 1156 (Fla. 1st DCA 1978). We disagree. In each of the cited cases, privity or duty owed by party "A" was found due party "C", when party "A" performed a service pursuant to a contract with "B" which "A" knew would be used by "C". The bona fide purchasers in the instant case would be in the place of "C" in the example, not Advance.
The final judgment here under review be and the same is hereby reversed, with directions to dismiss the cause.
Reversed and remanded, with directions.
NOTES
[1] The case went to trial on the second amended complaint. Originally, Charles Underwood, d/b/a Underwood Marine, and Underwood Marine Corporation were named as defendants, but they had been dropped as parties by the time of the second amended complaint.