432 So.2d 1378 (1983)
Irving SEGEL and Lena M. Segel, Appellants,
v.
The FIRST STATE BANK OF MIAMI, Appellee.
No. 83-95.
District Court of Appeal of Florida, Third District.
June 21, 1983.
*1379 Korman & Schorr and Stephen Schorr, Fort Lauderdale, for appellants.
Taylor, Brion, Buker & Greene and James W. Moore and James Pilkey, Miami, for appellee.
Before HENDRY, BASKIN and FERGUSON, JJ.
HENDRY, Judge.
This appeal stems from an action brought by Irving and Lena M. Segel against appellee First State Bank of Miami in which it was alleged that the appellee Bank breached its contract with appellants by its acceptance of an allegedly unauthorized endorsement on a cashier's check purchased from it by appellants in the amount of $39,700.
A summary final judgment was entered against appellants, after the trial court had considered motions by all of the parties for summary judgment. This appeal followed.
It was stipulated that the facts as set forth in the summary final judgment are correct, except in some minor details. As stated therein, the trial court's findings of fact and conclusions of law are, as follows:
"As based on the pleadings in this cause and exhibits thereto, the depositions and exhibits thereto, the affidavits and exhibits thereto, and the stipulation as to facts filed of record, the Court finds that there is no genuine issue with respect to the following material facts:

FINDINGS OF FACT
1. The Plaintiffs are husband and wife, residents of Hillsborough County and, they are sui juris.
2. The First State Bank of Miami, is a banking corporation, duly organized and existing under the laws of the State of Florida, and doing business in Dade County, Florida, now known as Barnett Bank of South Florida, N.A.
3. On or about June 5th, 1981, the Plaintiffs purchased a cashier's check in the amount of Thirty-Nine Thousand Seven Hundred and 00/100 Dollars ($39,700.00), from the First State Bank of Miami at the Defendant's Miami Lakes Branch.
4. The subject cashier's check was in consideration for the purchase of video games from a business concern known to the Plaintiffs as ROI, Inc.
5. The subject cashier's check was delivered by mail to 825 Logan Street, Denver, Colorado.
6. On or about June 8th, 1981, the subject cashier's check was deposited at the University National Bank in Denver, Colorado into the account of Marketing Associates, Inc.
7. The designated payee of the subject cashier's check was ROI, Inc., the endorsement of the payee on the subject check was: Marketing Associates, Inc. d/b/a ROI, Inc. deposit only XX-XX-XXX.
8. The subject check was negotiated through the collection chain and paid by the Defendant The First State Bank of Miami.
9. Marketing Associates, Inc. was a Colorado corporation at all times relevant hereto.
10. Marketing Associates, Inc. was involved solely in the sale of video games.
11. Marketing Associates, Inc. was operated and incorporated by an individual named William Beilman.
*1380 12. William Beilman was marketing director of Marketing Associates, Inc. and he controlled all corporate decision-making.
13. Approximately in May of 1981, either Marketing Associates, Inc. or the individuals who operated Marketing Associates, Inc. began doing business under the assumed or trade name ROI, Inc. ROI, Inc. was never incorporated by the individuals who operated Marketing Associates, Inc., nor did Marketing Associates, Inc. or the individuals involved therein ever, in accordance with Colorado law, properly register the assumed trade name, ROI, Inc. Marketing Associates, Inc. and ROI, Inc. operated out of the same office at 825 Logan Street, Denver, Colorado, and maintained the same telephone number. The telephone was answered "ROI of Colorado" or "ROI, Inc." when dialed.
14. The Plaintiffs also went into business with the individual William Beilman to sell video games in the State of Florida. This business was incorporated as ROI Video Games, Inc. in accordance with Florida law. William Beilman was a shareholder officer, and director with the Plaintiffs in this Florida corporation.
15. The Plaintiffs made no corporate, credit or trade name investigation of ROI, Inc. prior to issuance of the subject cashier's check, and the Plaintiffs made no credit investigation of William Beilman prior to issuance of the subject cashier's check.
16. The Plaintiffs purchased the subject cashier's check and designated the payee as ROI, Inc. upon instruction from William Beilman.
17. There is testimony, uncontradicted by the Plaintiffs, that the subject cashier's check was endorsed in the handwriting of William Beilman.
18. After the Plaintiffs became aware of the negotiation of the subject cashier's check over the subject endorsement, the Plaintiff Irving Segel traveled to 825 Logan Street, Denver, Colorado, conferred personally with the individual William Beilman, and he was assured the subject video games were going to be delivered.
19. The video games were never delivered.
20. The depositary bank, University National Bank, has handled several checks, both before and after handling the subject cashier's check with similar payee designations and similar endorsements, all without incident.

CONCLUSIONS OF LAW
21. The Court has jurisdiction over the subject matter of this controversy, and the parties herein.
22. The foregoing FINDINGS OF FACT are supported by substantial competent evidence and are deemed no longer to be in issue.
23. Although the Plaintiffs may have been deceived as to the true name of the entity with which they were dealing, the entity with which they were dealing has received the proceeds of the subject check. It is the general rule in the State of Florida that there is no liability on the part of the drawee bank, the Defendant in this case, for paying a check on a faulty or improper endorsement or even without endorsement if the drawee bank establishes that the intended payee received the proceeds of the check. [Florida National Bank v. Geer, 96 So.2d 409 (Fla. 1957); Northeast Bank of Clearwater v. Bentley, 413 So.2d 480 (Fla. 2d DCA 1982); See Gotham-Vladimir Advertising, Inc. v. First National City Bank, [27 A.D.2d 190] 277 N.Y.S.2d 719 (Sup.Ct. 1967); Blackmon v. Hale, [1 Cal.3d 548, 83 Cal. Rptr. 194], 463 P.2d 418 (Cal. 1970); Commercial Credit Corp. v. Empire Trust Company, 260 F.2d 132 (8th Cir.1958); cf. Watertown Federal Savings and Loan Association v. Spanks [346 Mass. 398], 193 N.E.2d 333 (Mass. 1963).] Applying this rule of law, even if the subject endorsement could be proven faulty or improper (which this Court does not find), by virtue of the intended payee having received the proceeds of the subject cashier's check, there is no liability to the Defendant. The Plaintiffs intended for no payee other than Marketing Associates, Inc. to receive the proceeds of the subject cashier's check, although *1381 they were dealing with Marketing Associates, Inc. under the name known to them as ROI, Inc. The assumed or tradename, ROI, Inc. had viability only in its use by the corporate entity, Marketing Associates, Inc. It is acknowledged that the assumed name, ROI, Inc., was not properly registered in the State of Colorado. Even so, this failure would have no effect whatsoever upon the circumstances of this dispute for, whether registered or not, Marketing Associates, Inc. used the name ROI, Inc., as its assumed name. [See Shreveport Auto Finance Corporation v. Southwestern Iron Corporation, 155 So.2d 71 (La. Ct. App. 1963); Johnston v. Exchange National Bank of Tampa [152 Fla. 228], 9 So.2d 810 (Fla. 1942).]. It is not the duty of the Defendant to ferret out and reveal a deceit which may have been perpetrated upon the Plaintiffs as to the true name of the entity with which they were dealing; and where, as here, the bank has paid the proceeds of the subject cashier's check to the actual entity with which the Plaintiffs were dealing, it has only carried out the intent of the Plaintiffs. [See Schweitzer v. Bank of America, N.T. and S.A. [42 Cal. App.2d 536], 109 P.2d 441 (Cal.Ct.App. 1941). See also Cohen v. Lincoln Savings Bank of Brooklyn [275 N.Y. 399], 10 N.E.2d 457 (Ct.App.N.Y. 1937).].
24. The Court concludes that there is no impropriety in the subject endorsement, and it is that of the named payee. [See § 673.3-203, Florida Statutes (1966); § 673.3-401(2), Florida Statutes (1966); see 6 and 7 Fletcher, Cyc. Corp., §§ 2442.1, 3052 (1978); Western Casualty and Surety Company v. Citizens Bank of Las Cruces, 676 F.2d 1344 (10th Cir.1982); See generally § 671.1-201(39) and Comment thereto].
25. The Court concludes that the Defendant paid the subject cashier's check in good faith and in accordance with commercially reasonable standards in the banking industry. Conversely, the Court concludes that the Plaintiffs substantially contributed through their own negligence to the placement of the subject endorsement, and they are thereby precluded from asserting any improper conduct on the part of the Defendant bank, which properly paid the subject cashier's check [§ 673.3-406, Florida Statutes (1966); Fidelity and Casualty Company of New York v. Constitution National Bank [167 Conn. 478], 356 A.2d 117 (Conn. 1975).]. It was the Plaintiffs who chose to do business with ROI, Inc. without conducting either a corporate search, credit search, or trade name search of the payee of the subject cashier's check prior to its issuance. Further, the Plaintiffs failed to conduct any background search on William Beilman, the principal in Marketing Associates, Inc., known to the Plaintiffs as ROI, Inc. as well as the individual with whom the Plaintiffs chose to conduct a similar business operation in the State of Florida under the corporate structure of ROI, Video Games, Inc. The Plaintiffs owed this investigation to themselves, and they cannot shift their responsibility to the Defendant for their improvident business decision not to conduct it. [See Florida Code Comments to Section 673.3-406 (1966).].
26. The Court concludes that the Plaintiff, Irving Segel, ratified the subject endorsement, when he traveled to Denver, Colorado, confronted the individual William Beilman, was assured that he was still to receive his video games, and then returned to the State of Florida to await delivery. With this ratification, the Plaintiffs cannot now turn to the Defendant bank and assert an impropriety in payment of the subject cashier's check.
27. The Court concludes that the Plaintiffs are the victims of a fraud perpetrated by the individual William Beilman, and while acknowledging that they have suffered a loss, this loss was not a result of acts performed, or not performed by the Defendant First State Bank of Miami, but as a result of their own intent to do business with an entity which chose not to fulfill its obligation to the Plaintiffs."
It is the appellants' contention that the trial court should have granted their motion for summary judgment instead of granting such judgment in favor of the Bank. We cannot agree.
*1382 It is our conclusion after carefully considering the record, briefs and arguments of counsel that the trial court was correct in entering summary final judgment in favor of the appellee and against the appellants. The record conclusively establishes the absence of any genuine triable issues of material fact and that appellee was entitled to a judgment as a matter of law. No reversible error having been demonstrated, the judgment appealed is affirmed.
Affirmed.