NESBITT, Judge.
Coral Gables Federal Savings and Loan Association (CGS & L) appeals from the trial court’s final judgment finding it liable to the City of Opa-Locka. We affirm.
The City of Opa-Locka employed Lou Ann Johnson as the Finance Director. Johnson controlled two bank accounts at CGS & L, designated “water deposits” and “waste deposits,” which were used to deposit predominantly cash payments made by city residents. When the payments were received, Johnson would have a clerk prepare a deposit slip. Johnson would then personally deposit the funds in the city's accounts at CGS & L. Johnson’s office would occasionally receive checks from other sources which were supposed to be deposited in an account at another bank. By diverting thirty of these checks, Johnson embezzled $64,291.17 from the city.[1] Although the city did not establish precisely how Johnson accomplished her scheme, it is clear that the checks were cashed through CGS & L because the checks were cleared through CGS & L's clearing house. When the city discovered the embezzlement, it sued CGS & L for breach of contract and negligence. The city alleged that CGS & L breached a contractual duty owed to the city and was negligent in honoring and cashing checks which were not properly endorsed.[2] At a bench trial, the city presented three possible alternative scenarios to prove CGS & L’s liability. These were: (1) CGS & L cashed the checks made payable to the city and gave the cash to Johnson, (2) the checks were simply accepted by the bank but never credited to the city, or (3) the checks, although made payable to the city, were cashed, and then the cash was deposited into the city’s accounts; Johnson was then able to misappropriate an equal amount of cash funds sent in by city residents. The city presented a number of expert witnesses all of whom agreed that the documentary evidence supported any one of the three possibilities. CGS & L did not present any testimony. At the end of a bench trial, the court held CGS & L liable to the city for $64,291.17 for breach of contract and negligence. The court also held that the city was not comparatively negligent.
On appeal, CGS & L’s first argument amounts essentially to a challenge of the factual findings made by the trial court. CGS & L contends that the trial court's findings — that CGS & L breached the contract and was negligent and that the *991 city was not comparatively negligent — are erroneous. We disagree, finding instead that the trial court’s final judgment is supported by substantial competent evidence. See Holland v. Gross, 89 So.2d 255, 258 (Fla.1956); Oceanic Int’l Corp. v. Lantana Boatyard, 402 So.2d 507, 511 (Fla. 4th DCA 1981); In re Estate of Donner, 364 So.2d 742, 748 (Fla. 3d DCA 1978).
Each of the three scenarios presented by the city is supported by both the documentary evidence and the testimony of the witnesses, and, in each, CGS & L’s negligent procedures played a vital role in the city’s loss. Considering that CGS <& L undoubtedly received the checks, as evidenced by the fact that the checks were cleared through CGS & L’s clearing house, and that CGS & L’s statements, which were sent to the city, reflected that all of its deposits were cash deposits, the record clearly supports the trial court’s finding that at least one of the scenarios presented by the city accurately depicts the events which led to the loss. The experts testified that the actions of the bank fell below the standard of care practiced by prudent banks. Based on any one of the scenarios, the trial court’s determination that CGS & L breached its contract and was negligent is not clearly erroneous but is supported by substantial competent evidence.[3]
Likewise, CGS & L cannot prevail on its argument that the trial court erroneously exonerated the city of comparative negligence. While a customer’s comparative negligence is a valid affirmative defense in a negligence action against a bank, cf. Key Bank v. First United Land Title Co., 502 So.2d 1280 (Fla. 2d DCA 1987) (customer’s negligence in hiring forger); Flagship Bank v. Complete Interiors, Inc., 450 So.2d 337 (Fla. 5th DCA 1984) (same); Ossip-Harris Ins., Inc. v. Barnett Bank, N.A., 428 So.2d 363 (Fla. 3d DCA 1983) (customer’s negligent failure to promptly reconcile bank statements as required by section 674.406, Florida Statutes (1981)); First Nat’l Bank v. Keshishian, 427 So.2d 313 (Fla. 5th DCA 1983) (same), the burden of proving this defense is on the party alleging it, Cuozzo v. Ronan & Kunzl, Inc., 453 So.2d 902, 903 (Fla. 4th DCA 1984). Since CGS & L did not present any evidence to establish that the city was *992 negligent either in its accounting procedures or in hiring the embezzler and since the evidence presented by the city did not suggest that there was. any negligence on its part, see Peavey v. City of Miami, 146 Fla. 629, 1 So.2d 614 (1941), the trial court properly determined that the city was not comparatively negligent.
CGS & L attempts to avoid liability by putting forward an argument premised upon the presumption that the third scenario presented below is the only one possible. Proceeding under the presumption that the third scenario is accepted as true, CGS & L argues that it is exonerated of liability under the general rule that a bank is not liable for honoring an improperly endorsed check if the bank establishes that the intended payee received the proceeds. See Florida Nat’l Bank v. Geer, 96 So.2d 409, 412 (Fla.1957); Segel v. First State Bank, 432 So.2d 1378, 1380 (Fla. 3d DCA 1983); Northeast Bank v. Bentley, 413 So.2d 480 (Fla. 2d DCA 1982). There are at least three reasons why this argument fails. First, on appeal CGS & L fails to establish that the third scenario is either the only possible one or even more likely than the other two. Second, in order to be protected by this rule the burden is on the bank to establish that the intended payee received the funds. See Geer, 96 So.2d at 412; Segel, 432 So.2d at 1380; Bentley, 413 So.2d at 481. In the instant case, CGS & L presented no evidence below to prove that the intended payee, the city rather than Johnson, received the funds. Third, the rule in Segel does not apply here. The purpose of the rule is to prevent the bank customer from recovering from the bank where the bank’s action in honoring the check does not have a sufficient causal connection with the customer's loss. In Segel, for example, this court affirmed a summary judgment in a bank’s favor where the bank paid funds to a corporation when the check had been made payable under a different corporate name. The court determined that the corporation which received the funds was one and the same as the payee corporation. Consequently the intended payee had received the funds despite the bank’s error. The result the court reached in Segel reflects a determination that the customer’s loss— when the dishonest payee later failed to deliver the goods ordered by the bank customer — was not caused by the bank’s error in honoring the improperly endorsed check. See also Commercial Credit Corp. v. Empire Trust Co., 260 F.2d 132 (8th Cir.1958) (bank not liable for negligently honoring improperly endorsed check where intended payee received funds and bank’s negligence not the proximate cause of plaintiff’s loss). In direct contrast, in the instant case one cannot honestly contend that CGS & L paid the intended payee or that CGS & L’s actions were not a cause of the city’s loss.
Finally, CGS & L claims that, even if it was negligent, its negligence was not the proximate cause of the city’s loss as a matter of law. CGS & L correctly points out that an independent, intervening, and unforeseeable criminal act is a superseding cause which serves to exonerate an original tort-feasor of liability. Relyea v. State, 385 So.2d 1378, 1382 (Fla. 4th DCA 1980); Gulfstar, Inc. v. Advance Mortgage Corp., 376 So.2d 243, 246 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 633 (Fla.1980); Sosa v. Coleman, 646 F.2d 991, 993-94 (5th Cir.1981); see Vining v. Avis Rent-A-Car Sys., Inc., 354 So.2d 54 (Fla.1977); Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175 (Fla.1976). While we agree with this proposition, we disagree with CGS & L’s contention that embezzlement is an unforeseeable result of a bank’s negligent banking procedures. In order to hold an original tort-feasor liable for the actions of an intervening criminal third party, it is not necessary that the original tort-feasor foresee the precise injury the negligent action causes or the precise manner in which the injury occurs. Crislip v. Holland, 401 So.2d 1115, 1117 (Fla. 4th DCA), review denied, 411 So.2d 380 (Fla.1981); Barclay Kitchen, Inc. v. California Bank, 208 Cal.App.2d 347, 25 Cal.Rptr. 383, 388 (1962). It is sufficient that the resulting injury is within the scope of the danger or risk created by the original tort-feasor’s negligence. Gibson v. Avis Rent-A-Car Sys., Inc., 386 So.2d 520 (Fla.1980); *993 Crislip, 401 So.2d at 1117; Bryant v. School Bd. of Duval County, 399 So.2d 417 (Fla. 1st DCA 1981), rev’d on other grounds, 417 So.2d 658 (Fla.1982); California Bank, 25 Cal.Rptr. at 388; see Pinkerton-Hays Lumber Co. v. Pope, 127 So.2d 441 (Fla.1961). The precise reason that banks employ sophisticated safeguards is to detect and prevent losses caused by criminal acts such as embezzlement. Thus the threat of embezzlement is clearly within the zone of risk created by a bank's negligent security procedures. Consequently, the trial court properly determined that Johnson’s criminal act was foreseeable and did not amount to a superseding cause, breaking the causal chain between CGS & L’s negligence and the city’s loss.[4] See Carlisle v. Ulysses Line Ltd., 475 So.2d 248 (Fla. 3d DCA 1985); cf. Vining, 354 So.2d at 54 (criminal act of stealing car not, as a matter of law, an unforeseeable result of owner’s negligence in having left keys in ignition); Nicholas, 339 So.2d at 175 (burglary not an unforeseeable criminal act superseding burglar alarm company’s negligence in monitoring security system); McCord v. Sentry Protection, Inc., 427 So.2d 1132 (Fla. 5th DCA 1983) (burglary not an unforeseeable criminal act superseding alarm company’s negligent repair and maintenance of security system); Singer v. I.A. Durbin, Inc., 348 So.2d 370 (Fla. 3d DCA 1977) (burglary not superseding cause of homeowners’ loss where burglar alarm company performed installation negligently); Sosa, 646 F.2d at 991 (murder by escaped prisoner not superseding cause of decedent’s death, as a matter of law, where sheriff’s negligence facilitated prisoner’s escape).
Accordingly, the final judgment appealed from is, in all respects, affirmed.

. Johnson a/k/a Andreasen was later convicted of grand theft. See Andreasen v. State, 439 So.2d 226 (Fla. 3d DCA 1983), review denied, 449 So.2d 264 (Fla.1984).

. At trial, the city contended that CGS & L had breached an express agreement to abide by City Resolution No. 1782, which prohibited CGS & L from cashing city checks without the signatures of at least two city officials.

. Although CGS & L does not raise the issue, we note that in finding CGS & L liable, the trial court did not violate the circumstantial evidence rule. The rule is that where a fact, essential to recovery in a civil action, is proven by circumstantial evidence, inferences pointing to the existence of the fact must outweigh all other reasonable contrary inferences which may be drawn from the circumstantial evidence before the court. Shepherd v. Finer Foods, Inc., 165 So.2d 750, 753 (Fla.1964); City of Jacksonville v. Waldrep, 63 So.2d 768, 769 (Fla.1953); Girdley Constr. Co. v. Ohmstede, 465 So.2d 594, 595 (Fla. 1st DCA 1985). Substantial competent evidence adduced at trial established that the city suffered a loss of $64,291.17. Direct evidence also established that the city’s checks presented to CGS & L by Johnson were accepted by CGS & L and cleared through it even though they were not properly endorsed. This was uncontested by CGS & L and established by the checks themselves which bore the stamp of CGS & L's clearing house. In addition, the evidence established that all of the deposits appearing on the bank statements prepared by CGS & L were listed as cash deposits. Following from the direct evidence, the trier of fact could reasonably infer that the proximate cause of the city’s loss was accurately described by the city’s alternative theories, which were all supported by the documentary evidence and expert testimony. See Voelker v. Combined Ins. Co., 73 So.2d 403, 406 (Fla.1954) (”[I]f the circumstances established by the evidence be susceptible of a reasonable inference or inferences which would authorize recovery and are also capable of an equally reasonable inference, or inferences, contra, a jury question is presented.”) In each case, only one inference was necessary to lead to the conclusion that CGS & L’s breach was a cause of the city's loss. See Nielsen v. City of Sarasota, 117 So.2d 731, 734 (Fla.1960) (proximate cause may be proven by circumstantial evidence). Following therefrom, the trial court’s determination that CGS & L’s breach of the duty it owed to the city was the proximate cause of the city’s loss, was not mere speculation but was a reasonable inference flowing from the circumstantial evidence. CGS & L has not put forth any other inferences following from the evidence which would simultaneously account for the city’s loss, exonerate CGS & L, and not be outweighed by those presented by the city. Compare Borrell-Bigby Elec. Co. v. United Nations, Inc., 385 So.2d 713 (Fla. 2d DCA 1980) (where evidence raised an unrebutted inference that the fire alarm may have been sabotaged, the plaintiff failed to sufficiently establish by circumstantial evidence that the proximate cause of its loss resulting from fire was the faulty design of the fire alarm system).

. We disagree with the suggestion of the dissent that the unique method of embezzlement affects the result. See p. 993. For CGS & L to be liable for the embezzlement it did not have to foresee Johnson’s specific acts. Instead, CGS & L merely had to be able to foresee that embezzlement was within the scope of danger created by its negligent banking practices.