427 So.2d 313 (1983)
FIRST NATIONAL BANK OF CAPE CANAVERAL, a Corporation Doing Business in the State of Florida, and Insurance Company of North America, a Corporation Doing Business in the State of Florida, Appellants,
v.
Roobik KESHISHIAN, Appellee.
No. 81-1411.
District Court of Appeal of Florida, Fifth District.
February 23, 1983.
Joe Teague Caruso, of Wolfe, Kirschenbaum, Caruso, Mosley & Kabboord, P.A., Cocoa Beach, for appellants.
Gary F. Large, Titusville, for appellee.
SHARP, Judge.
The lower court entered a final summary judgment in favor of Keshishian against the First National Bank of Cape Canaveral for accepting for payment two forged checks drawn on Keshishian's account. We reverse because we think the record shows there were material questions of fact as to the Bank's defenses under sections 673.406 an 674.406 of the Florida U.C.C.[1]
Keshishian, an Iranian citizen, first met two Brevard County residents, Masterson *314 and Moon, when they were in Iran in 1977. They discussed starting a business and forming a corporation in Florida. Keshishian came to Brevard County in November of 1977 and further explored the idea of starting a business. He opened a personal bank account at the First National Bank and deposited $35,000 into that account. He directed the bank to send his newly ordered checks and the bank statements to 7001 Astronaut Boulevard, Suite 100, Cape Canaveral, Florida. This was apparently Moon's and Masterson's address, and it was the proposed site for the new business.
Moon and Masterson opened a bank account at First National about the same time under the name American Irano Enterprises, Inc. Keshishian did not know about their account. Masterson was listed as president and Moon as vice president, and both were listed as signatories. Keshishian was designated as a signatory, but he never signed the signature card.
Keshishian decided he needed more time to think about the business proposition, and he left for Iran within three or four days after opening his account. He knew the checks and bank statements would be mailed to the local address. He expected Masterson would bring the checks to him in Iran and forward the bank statements. When Masterson arrived in Iran a few weeks later, he told Keshishian the checks had not yet been received.
Moon forged a check for $20,000 to American Irano Enterprises, Inc. on Keshishian's account. On February 17, 1978, the Bank charged Keshishian's account and transferred the funds to the account of American Irano Enterprises, Inc. A statement showing this transaction, together with the cancelled check, was mailed to Keshishian on February 17, 1978, at the Cape Canaveral address. Keshishian never received the statement or the check.
Similarly, on February 28, 1978, a $13,500.00 check drawn on Keshishian's account (also forged by Moon) was charged by the Bank. These funds also went into the American Irano Enterprises, Inc. account. A bank statement, together with the cancelled check, was mailed to the local address. Again Keshishian received neither one.
Keshishian decided not to go into the business with Moon and Masterson. In May 1978, he telephoned the Bank to make arrangements to put his funds into savings to earn interest. It was then he learned the funds had been withdrawn from his account; he put the Bank on notice the checks had been forged.
Keshishian confronted Moon and Masterson, and Moon admitted he had taken the money for some personal needs.[2] Fortunately for Moon, and perhaps Masterson, Keshishian did not report them to the Iranian authorities, whose treatment of thieves is much more severe than this country's. Moon promised repeatedly to replace the funds, but he never did. Eventually he was convicted of forgery in this country.
Appellee deposed Doris McIntosh, an officer for Appellant. She testified that, at the time the forgeries happened, when funds were transferred from one account to another within the Bank, as occurred here, the bookkeeper would compare the signature on the check with the signature on the card. McIntosh noted that the forged signatures on the two checks at issue were "so good" she was certain Keshishian had signed them when she was first called upon to investigate this matter.
*315 The rule in Price v. Neal, 3 Burr. 1354,[3] has been complicated somewhat by sections 673.406 and 674.406, Florida Statutes (1977). These statutes shift the loss from the drawee bank to the customer when the bank pays a forged item drawn on its customer's account and the customer, by his negligence, "substantially contributes" to the forgery. The bank is also protected if the customer fails to exercise reasonable care in examining his bank statement and checks, and this failure causes a loss or a subsequent loss on an item forged by the same wrong-doer after the customer has had the statement for 14 days. Both of these defenses were raised by appellant as affirmative defenses in its amended answer, and the pre-trial order stated (although somewhat inaccurately) that an issue for trial would be the "comparative negligence of the plaintiff."
In this case, looking at the record in the light most favorable to the Bank,[4] it appears there is a question of fact as to whether Keshishian's handling of his personal account contributed to Moon's forgeries. Also, it appears unresolved by this record as to whether Keshishian's failure to promptly report the forgeries after the statements were mailed caused the Bank's losses from the first or second forgery. Had the first been promptly reported, perhaps the second could have been prevented or the transferred funds from either or both could have been recovered. These were properly questions resolvable by the trier of fact. Travelers Insurance Company v. Jefferson National Bank at Kendall, 404 So.2d 1131 (Fla. 3d DCA 1981); Space Distributors, Inc. v. Flagship Bank of Melbourne, 402 So.2d 586 (Fla. 5th DCA 1981); Florida Federal Savings & Loan Association v. Martin, 400 So.2d 151 (Fla. 2d DCA 1981).
Appellee argues that both sections 673.406 and 674.406 require an affirmative showing by the Bank that it acted in good faith and in accordance with reasonable commercial standards. With regard to section 673.406 this may be true if the matter proceeds to trial, but with regard to section 674.406 it appears the customer must establish the bank acted without ordinary care to defeat the defense. However, this case was determined on summary judgment and the appellee failed to establish by affidavit or otherwise anything regarding lack of good faith, reasonable commercial standards or ordinary care. Appellee had the burden here, not appellant. Landers v. Milton, 370 So.2d 368 (Fla. 1979); Holl v. Talcott, 191 So.2d 40 (Fla. 1966). The deposition of the bank officer, Doris McIntosh, is sufficient to show the Bank handled the checks in accordance with its customary practice and that the forgeries were not obvious. From that we can infer the Bank acted in good faith and within the ambit of reasonable commercial standards, there being nothing to the contrary in this record. Florida Federal Savings & Loan Association v. Martin.
For the reasons stated herein, the judgment appealed is reversed and the case is remanded.
REVERSED AND REMANDED.
COBB and COWART, JJ., concur.
NOTES
[1] Section 673.406, Florida Statutes (1977), provides in part:

Any person who by his negligence substantially contributes ... to the making of an unauthorized signature is precluded from asserting ... lack of authority against ... a drawee ... who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's ... business.
Section 674.406, Florida Statutes (1977), provides in part:
(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries ... the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature ... and must notify the bank promptly after discovery thereof.
(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank:
(a) His unauthorized signature ... if the bank also establishes that it suffered a loss by reason of such failure; and
(b) An unauthorized signature ... by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature... .
(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).
[2] The record does not show how or when the funds were withdrawn by Moon from the American Irano account.
[3] The rule of Price v. Neal, 3 Burr. 1354, is that "[a] bank on which a check is drawn by its depositor is charged with knowledge of the depositor's signature." Sabatino v. Curtiss Nat'l Bank of Miami Springs, 446 F.2d 1046, 1056 (5th Cir.1971).
[4] Manucy v. Manucy, 362 So.2d 478 (Fla. 1st DCA 1978); Furlong v. First Nat'l Bank of Hialeah, 329 So.2d 406 (Fla. 3d DCA 1976).