502 So.2d 1280 (1987)
The KEY BANK OF FLORIDA, Appellant,
v.
FIRST UNITED LAND TITLE COMPANY, Appellee.
No. 86-1129.
District Court of Appeal of Florida, Second District.
January 23, 1987.
Rehearing Denied March 2, 1987.
*1281 Stevan T. Northcutt and Nancy G. Farage of Levine, Freedman, Hirsch & Levinson, P.A., Tampa, for appellant.
Albert C. Kreischer, Jr., Fuentes and Kreischer, Tampa, for appellee.
SCHOONOVER, Judge.
Appellant, The Key Bank of Florida (bank), appeals from a nonfinal order granting summary judgment on the issue of liability in favor of the appellee, First United Land Title Company (customer), in an action to recover money paid on a forged check. We reverse.
Sometime in mid-October of 1985, an employee of the bank informed the customer's bookkeeper, Mrs. Gilda Suarez, that the customer's escrow account at the bank was overdrawn. The customer eventually discovered that a forged check in the amount of $22,342 had been paid on the account. The check was made payable to one of its employees who, along with his wife, had been hired to clean the customer's offices. The customer brought an action against the bank pursuant to section 673.419, Florida Statutes (1985), for damages caused by the bank's allegedly improper payment of the forged item and failure to reimburse the customer's account for the amount of the forged instrument.
The bank filed an answer denying liability and asserting three affirmative defenses. The customer then moved for summary judgment and submitted the affidavit of Joe Suarez, an officer and director of the customer, and the deposition of Richard Horvath, who was employed by the bank as an assistant vice president for bookkeeping, proofs, and customer service operations. In opposition to the motion, the bank submitted an affidavit from Mr. Horvath and the deposition of Mrs. Suarez (bookkeeper). After the court entered a motion granting summary judgment on April 25, 1986, the bank timely filed this appeal.
As movant for summary judgment, the customer had the burden not only of demonstrating the absence of a genuine issue of material fact as to its own cause of action, but also as to the affirmative defenses set forth in the bank's answer. See Chereton v. Armstrong Rubber Co., 87 So.2d 579 (Fla. 1956); Emile v. First National Bank, 126 So.2d 305 (Fla. 3d DCA 1961); Fla.R.Civ.P. 1.510. The bank contends, and we agree, that the trial court erroneously entered summary judgment because the customer failed to carry this burden with respect to the bank's affirmative defenses.
The bank's first affirmative defense, predicated on section 673.406, Florida Statutes (1985), is that the customer is precluded from recovering the amount of the forged check because its own negligence substantially contributed to the making of the unauthorized signature and because the bank paid the instrument in good faith and in accordance with reasonable commercial standards.
The bank argues that the customer's negligence consisted of failing to adequately investigate the employees' backgrounds, failing to ensure that its checks were written in strict numerical sequence, and failing to safeguard its blank escrow checks and check imprinter in that the checks were stored in an unlocked filing cabinet in the reception area and the check imprinter on top of a filing cabinet in another room. In support of its argument, the bank cited Flagship Bank v. Complete Interiors, Inc., 450 So.2d 337 (Fla. 5th DCA 1984), where a summary judgment was reversed because the customer's apparent negligence may have facilitated the forgeries. The customer's apparent negligence consisted of its check writing procedures (use of an erasable typewriter to prepare checks) and of hiring a bookkeeper who was on probation for check kiting and placing her in a position of trust.
The customer in this case argues that its check writing procedures were regular. The bookkeeper stated in her deposition that although the checks were cashed out of sequence, they were always written in sequence. She also described a procedure used to ensure that the checks were being written in sequence so that a stolen or *1282 missing check could be detected. The customer additionally argued that its lack of negligence was evidenced by the fact that the blank check forms were maintained in a closed filing cabinet and were not generally accessible to the public, the check printing machine was used to prevent alteration of the sum shown on the face of the check and did not contain a facsimile signature, and the building within which the customer's office was located was locked and not generally accessible except during business hours.
We find that the conflict in testimony concerning whether the customer's checks were actually written in sequence and whether its check writing procedures were irregular indicates a question of fact bearing on the issue of the customer's negligence that should be resolved by the trier of fact. See Vincent v. Lawson, 272 So.2d 162 (Fla. 4th DCA 1973); see also, Flagship Bank. Furthermore, although, as the customer argues, its checks and its office were not generally accessible to the public, it was an employee and not a member of the public who committed this forgery. The cleaning people had unsupervised and unrestricted access to the premises, to the unsecured escrow checks, and to the unsecured check imprinter any time after business hours. Because the cleaning employees had been in the customer's employ for several years they were arguably worthy of its trust, but the customer never initially checked into their backgrounds, even when they expressly refused to disclose their address. As stated by the court in Flagship Bank, the scope of employee investigation required and whether an inadequate investigation contributed to the alterations are factual questions. Although we do not view any one factor here as dispositive, we consider that the aggregated facts, coupled with the inferences that can be drawn from them, were sufficient to create an issue as to whether the customer was negligent and whether this negligence substantially contributed to the forgeries. See Flagship Bank; Terry v. Puget Sound National Bank, 80 Wash.2d 157, 492 P.2d 534 (1972); see generally, Westport Bank & Trust Co. v. Lodge, 164 Conn. 604, 325 A.2d 222 (1973).
The customer attempts to distinguish Flagship Bank and Florida Federal Savings & Loan Association v. Martin, 400 So.2d 151 (Fla. 2d DCA 1981), arguing that, in those cases, not only was the customer negligent with regard to the making of the forged instrument but its negligence contributed to the acceptance of the instrument by the bank. Neither of those cases bases its holding upon this factor, but the customer argues that it may be found implicitly within the facts of those cases. In Flagship Bank, for example, the customer's failure to maintain internal controls enabled the bookkeeper to alter the checks, and in Martin, the employee obtained a secret password to authorize her to withdraw funds from the account. The customer appears to argue that the "negligence" contemplated by the statute must be more than negligently providing conditions under which a check can be forged or altered, but must be of a type to endow the forgery with indicia of authenticity such as to induce a bank to accept it.
We recognize that some jurisdictions impose this additional requirement. See, e.g., East Gadsden Bank v. First City National Bank, 50 Ala.App. 576, 281 So.2d 431 (1973); Society National Bank v. Capital National Bank, 30 Ohio App.2d 1, 281 N.E.2d 563 (1972). This is in keeping with pre-Uniform Commercial Code law, whereby negligence of the drawer was immaterial unless it was the cause of the circulation of the negotiable instrument, i.e., it directly and proximately affected the conduct of the bank in the performance of its duties and caused it to honor the check.[1]See *1283 generally, Annot. 67 ALR 3d 144 § 2a (1975); Annot. 39 ALR2d 641 (1955); see also, 10 Am.Jur.2d Banks § 624 (1963). Neither section 673.406 of Florida's Uniform Commercial Code, however, nor Florida case law construing it impose explicitly, or imply factually, the requirement that the type of negligence involved be such as to have contributed to the bank's acceptance of the check. See, e.g., First National Bank v. Keshishian, 427 So.2d 313 (Fla. 5th DCA 1983). The statute only requires that the negligence conduct be of a type to have substantially contributed to the making of the unauthorized signature. Official comment seven to the statute provides as follows:
7. The section applies the same rule to negligence which contributes to a forgery or other unauthorized signature, as defined in this Act (Section 1-201). The most obvious case is that of the drawer who makes use of a signature stamp or other automatic signing device and is negligent in looking after it. The section extends, however, to cases where the party has notice that forgeries of his signature have occurred and is negligent in failing to prevent further forgeries by the same person. It extends to negligence which contributes to a forgery of the signature of another, as in the case where a check is negligently mailed to the wrong person having the same name as the payee. As in the case of alteration, no attempt is made to specify what is negligence, and the question is one for the court or the jury on the facts of the particular case.
Examination of the examples set forth in the comment reveals that the negligence contemplated is not confined to that which induces the bank's acceptance. It extends, for example, to cases where the party had notice of a forgery and negligently failed to prevent further forgeries. The comment explicitly states that "no attempt is made to specify what is negligence" and that the determination should turn "on the facts of the particular case."
The bank's second and third affirmative defenses were predicated on section 674.406, Florida Statutes (1985). Subsection (1) of that statute provides in part that when a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries, or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover an unauthorized signature and to notify the bank promptly if one is found. Subsection (2)(a) precludes the depositor from recovering against a bank that has honored a forged check if the bank establishes that the customer failed to comply with its duty under subsection (1) and that it, as a result, suffered a loss.
The bookkeeper's deposition indicates that the bank sent statements to the customer bi-monthly, assumedly because a great deal of money was going through the account. The bookkeeper stated that she found it difficult to reconcile the account in the middle of the month because transactions were still ongoing at that point. Her practice was to put aside the statement and checks she received in the middle of the month until she received the second set and then she would do the bank reconciliation.
In October, the bank sent three statements. The first statement was dated October 10, 1985, and the bookkeeper stated that she probably received it two or three days after that date. The next statement was dated October 21, and the last was dated October 31. After the bookkeeper picked up the last statement from the bank on November 4, she examined all three statements and the items that had accompanied them. She then came across a check dated October 4, 1985, payable to the cleaning employee, with an unauthorized *1284 signature purporting to be that of an officer and director of the customer. It is undisputed that the forged check was paid by the bank on October 8 and that it was among the items accompanying the October 10 statement.
We agree with the bank that a genuine issue of material fact exists concerning whether the customer exercised reasonable care and promptness in examining its statement and the accompanying items. If the customer had promptly examined the October 10 statement upon receiving it, it could have discovered the forged check sooner than November 4. The customer argues that it was not unreasonable for the bookkeeper to wait until November 4, i.e., three weeks later, to examine the statements because during that time she had been, among other things, reviewing files to ensure that all funds due had been received and properly deposited, and to ensure that the amounts of the 500 checks written during October conformed to the amounts the bank had computed. The statute makes it clear, however, that the customer must exercise "promptness" in examining the items that accompany a bank statement. It does not, as a matter of law, identify tasks that will excuse a delay in complying with this duty. Whether the customer's activities reasonably prevented it from examining the October 10 statement sooner, and whether waiting three weeks to examine the statement contravenes the requirement of "promptness" are, we believe, questions for the trier of fact to resolve. See generally, Deer Island Fish & Oyster Co. v. First National Bank, 166 Miss. 162, 146 So. 116 (1933). Although the statute does not define "promptness," subsection 2(b) prevents a depositor from recovering on any subsequent forgeries after the first item and statement have been available to the customer for a reasonable period not exceeding fourteen calendar days. Notwithstanding the fact that subsequent forgeries are not involved in this case, we find it significant that the customer had the October 10 statement for a period exceeding fourteen days before it even discovered the first item.
Based on the holding in Winkler v. Commercial National Bank, 42 Mich. App. 740, 202 N.W.2d 468 (1972), the customer argues that because the item had been paid on October 8, which was prior to the customer's receipt of the October 10 statement, the bank's loss could not be attributed to any failure on the part of the customer to notify the bank, as required by subsection 2(a). We do not agree. As recognized by the court in Keshishian, had the forgery been promptly reported, it is possible that the transferred funds from the check could have been recovered. The bank's assistant vice president made this same contention in his deposition.
Although, as the customer correctly points out, the bank failed to allege it had suffered a loss as a result of the depositor's failure to exercise its duty, this pleading defect may be corrected upon remand. Where summary judgment should be entered, yet the matters presented indicate that the unsuccessful party may have a cause of action or defense not pleaded, the proper procedure is to enter the summary judgment without prejudice to the party to move for leave to amend. Hart Properties, Inc. v. Slack, 159 So.2d 236 (Fla. 1963); Roberts v. Braynon, 90 So.2d 623 (Fla. 1956). This is especially appropriate here where summary final judgment has not been entered. See First National Bank v. Pappas, 372 So.2d 989 (Fla. 2d DCA 1979).
We, accordingly, reverse the summary judgment and remand for proceedings consistent herewith.
REVERSED.
FRANK, J., concurs.
GRIMES, A.C.J., dissents with opinion.
GRIMES, Acting Chief Judge, dissenting with opinion.
I fully agree with the excellent discourse of the law contained in the majority opinion. My quarrel pertains to the application of the law to the facts of this case.
With respect to the affirmative defense under section 673.406, Florida Statutes (1985), I cannot see how the customer can *1285 be said to be negligent for failing to lock up its checkbook to prevent a longtime employee who cleaned the office at night from forging one of its checks. The check imprinter did not contain a facsimile signature, and the fact that checks may have been occasionally written out of sequence had nothing to do with the forgery.
I further believe that the facts do not support the Bank's affirmative defense under section 674.406, Florida Statutes (1985). The Bank honored the check on October 8, 1985. The statement containing this item was dated October 10, 1985, and received by the customer two or three days later. The employee who forged the check failed to appear for work on October 11, 1985, and was never seen again. In answer to a question concerning how a more prompt disclosure of the forgery would have prevented the loss, the Bank's assistant vice president simply stated that there might have been a better opportunity to recover the funds. I do not think that this suffices to present a genuine issue of material fact on whether the customer's lack of promptness in examining the statement caused the loss, particularly where the Bank failed to even plead it.
I respectfully dissent.
NOTES
[1] Before enactment of the Uniform Commercial Code, this type of case was governed by section 23 of the Negotiable Instruments Law, which provided as follows:

When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.
The word "precluded" as used in section 23 was generally held to be synonymous with "estopped"; therefore, the negligence had to be some act upon which the bank relied to its detriment. See generally, Annot. 39 ALR2d 641 § 3a (1955); Coffin v. Fidelity-Philadelphia Trust Co., 374 Pa. 378, 97 A.2d 857 (1953); Union Trust Co. v. Soble, 192 Md. 427, 64 A.2d 744 (1949).