NORTHCUTT, Judge.
This litigation stemmed from the May 1995 demolition of a building owned by Red Cedar Corporation, done at the behest of the Manatee County Code Enforcement Section. Through an administrative foul-up, Red Cedar did not receive proper prior notice so that it could contest the County’s plan to destroy its building. Following the demolition, Red Cedar sued both the County and C.E. Huffman Trucking, Inc., which had performed the demolition pursuant to a preexisting contract with the County. Prior to trial, the liability of each defendant was established in separate partial summary judgment orders. A jury trial on damages resulted in a verdict and final judgment in the sum of $440,000.
We reverse the partial summary judgment determining that Huffman was liable to Red Cedar for trespass. A plaintiff moving for summary judgment must either conclusively disprove any affirmative defense pleaded by the defendant, or demonstrate that the defense is legally insufficient. See The Key Bank of Florida v. First United Land Title Co., 502 So.2d 1280 (Fla. 2d DCA 1987). Here, Huffman alleged that it acted as the agent of the County. The record on Red Cedar’s motion for summary judgment did not disprove this assertion. Cf. Mingo v. ARA Health Services, Inc., 638 So.2d 85, 86 (Fla. 2d DCA 1994) (provider of medical services to county jail inmates held not to be agent of county, where its contract expressly disavowed that status). Nor did Red Cedar demonstrate that the agency defense was legally insufficient. See § 768.28(9)(a), Fla. Stat. (1993).
We also reverse the partial summary judgment finding the County liable under an inverse condemnation theory. Red Cedar did not plead this theory of recovery in its complaint. It was injected into the case only after the circuit court eliminated most of the counts against the County on motion for summary judgment. In a supplemental brief in support of Red Cedar’s motion for reconsideration of that ruling, Red Cedar suggested that one of the counts could be interpreted as an inverse condemnation action and reinstated as such. The court did so in an order entered just five weeks before the December 16,1996 trial date. The County filed a motion for rehearing, protesting that it had been deprived of an opportunity to plead in response to this belated theory of recovery, or to advance appropriate affirmative defenses. On November 26, 1996, Red Cedar filed a motion for summary judgment on its new inverse condemnation claim, and served it on the County by mail. The circuit court heard both motions on the first day of the scheduled trial. It denied the County’s motion for rehearing, and it granted Red Cedar’s motion for summary judgment. The trial then proceeded against both defendants on the issue of damages.
The partial summary judgment against the County must be reversed for two reasons. *298 First, over the County’s objection, the motion •was heard only twenty days after it was served by mail, in violation of rules 1.090(e) and 1.510(c), Florida Rules of Civil Procedure. See Nelson v. Balkany, 620 So.2d 1138, 1139 (Fla. 3d DCA 1993) (holding that scheduling of hearing on motion for summary judgment less than 25 days after filing and mailing of motion was prejudicial error, requiring that judgment be set aside, particularly where hearing rested on theory different from that pled.)
More importantly, the partial summary judgment determined that the County was liable on a theory that had never been pleaded, and as to which it had never had the opportunity to file a responsive pleading and affirmative defenses. We agree that, properly pleaded, such an action lies here. See Kirkpatrick v. City of Jacksonville Through Dept. of Housing and Urban Development, 312 So.2d 487, 489 (Fla. 1st DCA 1975) (holding that property owner whose real or personal property has been destroyed by unwarranted governmental action may institute a proceeding to compel the governmental body to exercise its pówer of eminent domain and award just compensation to the owner); Flatt v. City of Brooksville, 368 So.2d 631 (Fla. 2d DCA 1979) (same). However, the timing and manner of this theory’s injection into the lawsuit severely prejudiced the County. On remand, the circuit court shall have the discretion to permit a proper amendment to Red Cedar’s pleadings to assert an inverse condemnation claim, provided that the County is provided an adequate opportunity to plead in response and prepare its defense to the claim.
Finally, the verdict and final judgment on damages must fall. We agree with the County and Huffman that the circuit court abused its discretion when, at the eleventh hour, it limited the number of witnesses the parties would be permitted to present. Having ruled that the County and Huffman were liable to Red Cedar, the court declared that the trial would proceed solely on the issue of the value of the property that had been taken in the inverse condemnation. The court announced that it had reviewed the parties’ witness lists, and it would allow each side to present only the testimony of its expert appraiser. Among other things, the court excluded the testimony of two real estate brokers, Lauber and LaPasso, both of whom had previously listed the property for sale and had knowledge of the building’s condition before the demolition. The court also refused to permit the testimony of an architect, Fawley, who was to testify regarding the cost of repairing the building to meet code requirements.
While a trial court may restrict the number of witnesses who testify, the parties are entitled to fair notice of the limitation. See Fla. R. Civ. P. 1.200; Fogel v. Mirmelli, 413 So.2d 1204, 1207-1208 (Fla. 3d DCA 1982). Certainly, trial preparation begins well before the first day of trial. The parties having submitted their witness lists in advance and prepared their presentations based on the reasonable assumption that particular witnesses would be called to testify regarding particular facts or areas of inquiry, it was unreasonable for the court to announce at the start. of trial not only that the court was limiting the number of witnesses, but that the court had selected each party’s witness.
We also agree with the County that the circuit court erred in not allowing testimony concerning the reason for the structure’s demolition. The general rule for calculating severance damages in a condemnation proceeding is the “before-and-after” rule, under which severance damages are the difference between the value of the property before and after the taking. See Stockman v. Duke, 578 So.2d 831 (Fla. 2d DCA 1991); Canney v. City of St. Petersburg, 466 So.2d 1193 (Fla. 2d DCA 1985). A jury in an eminent domain proceeding should receive all evidence relevant to the value of the property being taken. See Garcia v. State Dept. of Transp., By and Through Div. of Administration and Road Operations, 342 So.2d 522 (Fla. 3d DCA 1977). The jury should consider any factor that affects the market value of property and is a proper basis for an expert’s consideration. See State, Dept. of Transp. v. Finkelstein, 629 So.2d 932 (Fla. 4th DCA 1993), approved, 656 So.2d 921 (Fla.1995).
*299 A myriad of factors may affect the value of a property. In Finkelstein, the court held that evidence relative to the contamination of the property and costs of remediation was relevant to its value on the date of taking, and to the effect that the stigma of contamination would have on the property’s market value in the mind of the buying public. Here, the dilapidated condition of the building and its imminent condemnation for public health and safety were significant factors affecting its value, as was the cost of repairing the building to meet code requirements. The circuit court abused its discretion when it refused to permit testimony regarding those matters.
The final judgment and the partial summary judgments determining that the County and Huffman were liable to Red Cedar are reversed, and the case is remanded for further proceedings consistent with this opinion.
FULMER, A.C.J., and QUINCE, J., concur.