GOTHAM-VLADIMIR ADVERTISING, INC., Respondent, v. FIRST NATIONAL CITY BANK et al., Appellants.

CHEMICAL BANK NEW YORK TRUST COMPANY et al., Defendants and Third-Party Plaintiffs-Respondents, v. FIRST NATIONAL CITY BANK, Defendant and Third-Party Defendant-Appellant.

First Department, March 7, 1967.

*John B. Creegan* of counsel (*John E. Hoffman, Jr.,* with him on the brief; *Shearman & Sterling,* attorneys), for First National City Bank, appellant.

*Victor W. Livornese* of counsel (*Matthew F. Donohue* and *John B. Wynne,* attorneys), for the Chase Manhattan Bank and another, appellants.

*Joseph Karow* for respondent.

BASTOW, J.   These consolidated actions were brought to recover damages from the three defendants for allegedly paying checks improperly indorsed by a third party who received the proceeds thereof instead of the named payee.   At the close of the evidence the trial court directed judgment against the respective defendants as follows: First National City Bank (First National) $29,619.31; Chase Manhattan Bank (Chase) $5,000, and Chemical Bank New York Trust Company (Chemical) $2,554.81.   It further directed judgment over against First National in favor of Chase and Chemical for the respective amounts of plaintiff's recoveries against them.

The actions are based on 14 checks drawn by plaintiff between December 5, 1962 and November 22, 1963 payable to Clark-Gotham Associates, Inc. (Clark-Gotham).   Twelve of the checks were drawn on First National, one on Chase and one on Chemical.   Eleven of the checks were indorsed by rubber stamp " For deposit, Clark Associates of Puerto Rico," one bears the handwritten indorsement " For deposit ~~Clark-Gotham Associates~~ Clark Associates " and two were not indorsed.   All checks were deposited in an account maintained by Clark Associates in a branch of First National in San Juan, Puerto Rico which guaranteed prior indorsements.   It was stipulated on the trial by respective counsel for the three banks that in the event plaintiff recovered upon the checks drawn on Chase and Chemical the latter were entitled to judgment over against First National.

Plaintiff for many years has been an advertising agency with some 230 affiliates in this and foreign countries.   In January, 1962 it employed Clark Associates as its affiliate in Puerto Rico. It appears that plaintiff would formulate plans for advertising campaigns for its clients in Puerto Rico.   These would be sent to Clark Associates who would implement the plans by contracts with local advertising media such as newspapers, radio and television stations.   Clark Associates in the first instance became indebted for such services and from time to time would render statements to plaintiff.   Clark Associates carried on an independent advertising agency.

After this arrangement had continued for some six months and in July, 1962 it was agreed between plaintiff's president (Kron) and Mr. Clark (the principal of Clark Associates) that a corporation would be organized with 51% of the stock owned by plaintiff and 49% by Clark. This corporation (Clark-Gotham Associates, Inc.) was not formally incorporated until October, 1962 but operated *de facto* from July 1, 1962. Kron became chairman of the board of the new corporation and Clark the president and general manager.

It is undisputed that for a year after July, 1962 no account books were set up by the new corporation. This was done with the knowledge and consent of plaintiff. In June, 1963 Priest, plaintiff's treasurer was sent to San Juan to set up a new bookkeeping system for Clark-Gotham. This he did but he did not investigate the checking account. The proof is clear, however, that the new corporation continued to use the checking account of Clark Associates and no bank account was ever opened in the name of Clark-Gotham Associates, Inc.

On December 1, 1963 Clark resigned as an employee and officer of Clark-Gotham. In the same month Priest returned to San Juan. He found that Clark had overdrawn his salary account by some $5,000. In addition there was a substantial sum due Puerto Rican creditors from Clark-Gotham that plaintiff undertook to pay to maintain its credit standing. The present action followed which is based on allegations in the complaints that the several checks were unlawfully paid by the respective drawee banks "to Clark Associates of Puerto Rico although [they] were not entitled to receive the proceeds of the same."

The trial court in directing a verdict in favor of plaintiff (although no motion therefor was made) adopted the view that each of the checks bore an improper and unauthorized indorsement which was wholly inoperative and the respective defendants had no right to charge the accounts of plaintiff with the amounts thereof. This, of course, is the general rule found in the statutes (Negotiable Instruments Law, § 42; Uniform Commercial Code, § 3-404). It is a familiar legal principle that payments made on forged or unauthorized indorsements are at the peril of the bank unless it can claim protection upon some principle of estoppel . (*Shipman* v. *Bank of State of N. Y.,* 126 N. Y. 318, 327; *Commercial Trading Co.* v. *Trade Bank & Trust Co.,* 286 App. Div. 722, 726.)

It is generally held, however, that a drawer is precluded from recovering from the drawee bank for paying his check on a

forged or unauthorized indorsement where the proceeds of the check actually reach the person whom the drawer intended to receive them (10 Am. Jur. 2d, Banks, § 625; 5 N. Y. Jur., Banks and Trust Companies, § 363; 9 C. J. S., Banks and Banking, § 356; 5B Michie, Banks and Banking, § 277a; 6 Zollmann, Banks and Banking, § 4295; Ann. 39 ALR 2d 641, 649; *Sweeney* v. *National City Bank of Troy,* 263 App. Div. 418, affd. 290 N. Y. 624; *Hillsley* v. *State Bank of Albany,* 24 A D 2d 28; *Yanowe & Co.* v. *American Exch. Irving Trust Co.,* 226 App. Div. 530).

In *Sweeney* (*supra,* p. 423) it was stated that the legal principle was '' to prevent the depositor from being unjustly enriched by collecting from his creditor-bank the sum which has, in fact, reached the payee to whom the depositor intended the fund to go.'' It has elsewhere been suggested that in such event the drawer would not suffer any financial loss or be damaged because of the payment on the forged or improper indorsement. (*Hillsley, supra,* p. 31; *Beeson-Moore Stave Co.* v. *Clark County Bank,* 160 Ark. 385.)

Upon the trial the only witnesses were Kron and Priest — president and treasurer, respectively, of plaintiff. Defendants rested without submitting any proof. It was established, however, from the testimony of the two witnesses that Clark-Gotham never had an independent bank account; that without objection from plaintiff (the majority stockholder of Clark-Gotham) Clark used the bank account of Clark Associates as a depositary of funds of Clark-Gotham and plaintiff's checks payable to Clark-Gotham were deposited therein.

Thus, upon cross-examination Kron was asked to examine the 14 checks in question and testified — '' From examining them, I believe that the payee [Clark-Gotham] received all of these checks and deposited them in their account.'' Similarly, Priest was questioned as follows: '' Q. Can you tell us, sir, whether from your analysis of the books and records of the payee of those [14] checks, Clark-Gotham Associates, Inc. the checks were received by the payee? A. Yes, they were. Q. And they were received into the general funds of the payee corporation? A. They were.'' Moreover, it is undisputed that the check for $5,000 drawn by plaintiff on Chase was in payment of the 51% stock interest in Clark-Gotham. Plaintiff received the stock certificates and continued to hold them at the time of the trial.

In sum, if plaintiff has been damaged, it failed to prove that such damage was caused by the improper indorsements on the

checks. Its officers concede that the funds were received by the named payee (Clark-Gotham) and became part of its corporate funds. If plaintiff sustained a loss it was due to its negligence in not requiring Clark-Gotham to establish a separate bank account with adequate supervision by plaintiff as the majority stockholder.

It follows that the trial court erred in directing a verdict in favor of plaintiff. The judgment should be reversed and the complaints and third-party complaints dismissed.

STEUER, J. P., CAPOZZOLI, TILZER and McNALLY, JJ., concur.

Judgment unanimously reversed, on the law, with $50 costs and disbursements, and the complaints and third-party complaints dismissed. Settle order on notice.