[Civ. No. 68350. Second Dist., Div. One. Oct. 28, 1983.]

SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP et al.,
Plaintiffs and Respondents, v.
CVETAN S. BOZINOVSKI, Defendant, Cross-defendant and Respondent;
BANK OF AMERICA, Defendant, Cross-complainant and Appellant;
FIRST STATE BANK OF SOUTHERN CALIFORNIA,
Cross-defendant and Appellant.

504

COUNSEL

Cayer & Westrup and R. Duane Westrup for Defendant, Cross-complainant and Appellant and for Cross-defendant and Appellant.

Thelen, Marrin, Johnson & Bridges, James W. Baldwin and John D. Merrill for Plaintiffs and Respondents.

Cheong & Denove, Drew R. Antablin and John F. Denove for Defendant, Cross-defendant and Respondent.

OPINION

SPENCER, P. J.—

### INTRODUCTION

Defendant and cross-complainant Bank of America National Trust and Savings Association and cross-defendant First State Bank of Southern California appeal from a judgment distributing the sum of $50,000 deposited by plaintiff Southern California Permanente Medical Group with the court.

### STATEMENT OF FACTS

On November 14, 1977, Attorney Milan Moacanin (Moacanin) was retained to represent Cvetan S. Bozinovski (Bozinovski) in a medical malpractice action to be filed against Southern California Permanente Medical Group (Permanente) and George L. Feinstein, M.D. Bozinovski executed a written retainer agreement providing that Moacanin be compensated for his services on a contingency fee basis and granting a lien upon the cause of action in Moacanin's favor.

Bozinovski subsequently terminated Moacanin's services and retained Eugene Bambic (Bambic) in his stead. On July 5, 1978, Bozinovski executed a written retainer agreement granting to Bambic the right to receive as his fee the sum of 40 percent of any money or property received by action or compromise in the resolution prior to trial or arbitration of Bozinovski's medical malpractice action or 45 percent of any money or property received subsequent to a trial setting conference. The retainer agreement also provided that Bambic was given the authority to "sign all documents, papers, releases, drafts, and the like" on behalf of Bozinovski.

During the course of Bambic's representation of Bozinovski, arbitration yielded an award in favor of Bozinovski in the amount of $50,000. Permanente forwarded their check for $50,000, drawn on Bank of America National Trust and Savings Association (Bank of America) and made payable to "Cvetan S. Bozinovski & His Attorney Eugene Bambic & Milan Moacanin," to Bambic's office.

Bambic received the check on January 12, 1981; the check was presented at First State Bank of Southern California (First State) for deposit into Bambic's trust account. In accordance with written instructions, First State transferred $25,000 from Bambic's trust account into Bambic's office account. First State then forwarded Permanente's check to Bank of America for payment; Bank of America debited Permanente's account for $50,000.

Permanente was subsequently advised of Bozinovski's and Moacanin's claim that their signatures had been forged; Permanente requested that Bank of America recredit its account with the $50,000 previously debited. Bank of America complied with Permanente's request.

Permanente then brought this action in interpleader in order for the court to determine the respective parties' interest in the recredited $50,000. On January 27, 1982, prior to the commencement of trial, Bambic executed a statutory offer to compromise providing that he would make no claim against Permanente for any sum and stating that he had no interest in the interpleaded money; Permanente accepted his offer.

On July 26, 1982, Bank of America, First State, Bozinovski, Bambic and Moacanin stipulated a settlement of Moacanin's claim whereby the parties agreed that Moacanin would receive $5,410.34 in settlement of his lien.

At trial, Bambic testified that the signatures purporting to be his on both the $50,000 check and the written instructions directing First State to transfer $25,000 into his office account appeared to be his. With respect to the other signatures on the check, all parties stipulated that Moacanin's signature had been forged; Bozinovski denied the authenticity of his signature. Bank of America and First State contended that Bozinovski's signature was authorized by virtue of his written retainer agreement with Bambic.

The trial court ruled that Permanente's original check was wholly inoperative by virtue of the presence of at least one forged signature. As a result, the court distributed the interpleaded funds in the following manner: (1) nothing to Bambic by virtue of the statutory offer to compromise, (2)

$5,410.34 to Moacanin pursuant to the stipulated settlement of July 26, 1982, and (3) the remainder to Bozinovski.

Notice of appeal was timely filed.

## CONTENTIONS

Bank of America and First State contend that the trial court erroneously failed to reach a conclusion as to what portion of the interpleaded $50,000, if any, Bank of America and First State were entitled to receive.

## DISCUSSION

We agree with Bank of America and First State that the trial court erroneously failed to determine what portion of the interpleaded funds the banks were entitled to receive. The question before the court, essentially, is whether collecting and/or payor banks which have improperly paid out on a joint payee check are liable for the full face value of the instrument where one joint payee has received payment from the improperly paid check. We conclude that a bank's liability for conversion does not require a bank to duplicate its original payment to a joint payee to the extent that the joint payee has received payment in accordance with the drawer's intention. As this is a case of first impression, we supplement our statutory references with citations to the decisions of sister state courts.

Initially, we note that the law applicable to commercial paper and banking is found in articles 3 and 4 of the Uniform Commercial Code, California Uniform Commercial Code sections 3101 et seq. and 4101 et seq. There can be no doubt, after a review of the pertinent sections, that Permanente's check was improperly paid by both the collecting bank, First State, and the payor bank, Bank of America.

Commercial Code section 3404, subdivision (1) provides "Any unauthorized signature is wholly inoperative as that of the person whose name is signed . . . ." As all parties agreed Moacanin's indorsement was forged, we can only conclude that the signature purporting to be Moacanin's was unauthorized (Cal. U. Com. Code, § 1201, subd. (43)) and, thus, wholly inoperative as to him.

The presence of Moacanin's unauthorized signature on the joint payee check precluded proper negotiation, as Commercial Code section 3116 provides in pertinent part: "An instrument payable to the order of two or more persons (b) If not in the alternative is payable to all of them and may be

negotiated, discharged or enforced only by all of them." (*Harry H. White Lbr. Co.* v. *Crocker-Citizens Nat. Bk.* (1967) 253 Cal.App.2d 368, 375 [61 Cal.Rptr. 381].)[1] However, neither the Commercial Code nor judicial interpretation thereof require the conclusion that Permanente's check was wholly inoperative. While section 3116 provides that a joint payee check must be negotiated by all payees in order to be properly payable, it does not preclude the consideration of funds received by designated payees in the determination of damages resulting from the improper payment. Furthermore, section 3404, subdivision (1) provides only that unauthorized signatures are wholly inoperative, not that a check bearing both authorized and unauthorized signatures is inoperative. Thus, the code is silent with respect to the determination of damages where an intended payee has received funds improperly paid out by a drawee or collecting bank.

We have concluded, however, from code sections prescribing damages payable as a result of conversion that the extent to which a payee has received funds is pertinent to a determination of a bank's liability for conversion. According to California Uniform Commercial Code section 3419, subdivision (1), "An instrument is converted when (c) It is paid on a forged indorsement." The California code comment to section 3419, subdivision (1) (West's Ann. U. Cal. Com. Code (1982 pocket supp.) § 3419, p. 17) states that an action may be brought against "a drawee [who] actually pays an instrument drawn on him when the instrument bears a forged indorsement."[2] An action for conversion, may therefore, be brought against the drawee bank, Bank of America. Similarly, a joint payee may also bring an action for conversion against the collecting bank. (*Cooper* v. *Union Bank* (1973) 9 Cal.3d 371, 376 [107 Cal.Rptr. 1, 507 P.2d 609].) As Bank of America voluntarily recredited Permanente's account, neither drawer nor either of the joint payees needed to initiate an action in conversion. The rules which would be applicable to the measure of the banks' liability if the money were still in the banks' hands, however, are applicable here where Bank of America voluntarily recredited the drawer's account, as the recredit does not alter the extent to which the bank is liable for conversion.

The measure of damages for conversion is specified in California Uniform Commercial Code section 3419, subdivision (2), "In any action under subdivision (1), the measure of liability is presumed to be the face amount of .

---

[1]We need not address whether Bozinovski's signature was authorized as the result we reach is supported by the presence of Moacanin's unauthorized signature.

[2]According to the Uniform Commercial Code comment to section 4105, "The term payor bank includes a drawee bank . . . ." A payor bank, and therefore a drawee bank, is "[A] bank by which an item is payable as drawn or accepted." (Cal. U. Com. Code, § 4105, subd. (b).) Thus, since the first $50,000 check was drawn on the Bank of America, Bank of America is a payor or drawee bank.

the instrument." The code presumes, therefore, that the measure of damages where a drawee or payor bank has converted funds is the face value of the instrument.

California code comments to section 3419 provide further information on the presumption created by subdivision (2). " 'The California authorities recognize the liability to the payee of a drawee bank which pays out on a forged indorsement, but they are obscure on the measure of damages. In *Hensley-Johnson* v. *Citizens National Bank,* 122 Cal.App.2d 22, 25, 264 P.2d 973 (1953) the court states: "The general rule is that a bank which has paid out money on a forged endorsement is liable to the payee of the check for *the amount which he should have received thereon."* There is no indication in the California cases that the drawee's liability must in all cases be the face amount of the instrument.

" '. . . . . . . . . . . . . . . . . . . . . . .

" 'The proposed amendment seems sound in that it allows for the possibility that *under some circumstances it would be unjust to hold the drawee for the face amount of the instrument.'* Sixth Progress Report to the Legislature by the Senate Fact Finding Committee on Judiciary (1959-1961) Part 1, The Uniform Commercial Code, p. 468." (Italics added; Cal. Code Com. West's Ann. U. Cal. Com. Code (1964 ed.) § 3419, pp. 395-396.)

The comments also note that "Section 13419 [3419] would *not* increase the bank's liability . . . . The bank, of course, would still be out of pocket the duplicate *payment* made on the forged indorsement. Under section 13417 [3417] . . . *the bank could recover this from the one receiving the payment,* if it can find him." (Italics added; *id.* at p. 394.)

The above comments indicate the presumption created by section 3419 may be rebutted by a showing that a payee has received the sum intended by the drawer. Two California cases support our conclusion. Both cases addressed whether collecting banks were liable to joint payees where a joint payee check had been accepted for payment by a collecting bank over a forged indorsement. The collecting bank in *Harry H. White Lbr. Co.* v. *Crocker-Citizens Nat. Bk., supra,* 253 Cal.App.2d 368, accepted checks totalling $5,760 for payment despite the forged indorsement of one joint payee. The court held, inasmuch as the checks were not properly negotiated, that the plaintiff, who was suing for only a portion of the improperly paid funds, had a cause of action against the collecting bank. The court also noted that under Commercial Code section 3419 the payee of a forged check also had a cause of action against a payor bank.

In 1967, this division cited *Harry H. White Lbr. Co.* in *Indiana Plumbing Supply Co.* v. *Bank of America* (1967) 255 Cal.App.2d 910, 918 [63 Cal.Rptr. 658]. We noted there that the interest of a joint payee may become a question of fact where the amount claimed by the joint payee is less than the total amount of the check or checks in question. Although in both cases the courts included a discussion of the Commercial Code sections applicable to the facts of our case, neither court concluded that the improperly paid checks were totally inoperative.

Decisions of sister states are informative. "The rule in Florida is that a bank may escape liability for honoring a check on a faulty or improper endorsement, or even without endorsement, if the bank can prove that the intended person received the proceeds of the check." (*Northeast Bank of Clearwater* v. *Bentley* (Fla.App. 1982) 413 So.2d 480, 481.) In addition, it is generally held that a drawer may not recover from the drawee bank for paying the drawer's check over a forged endorsement where the proceeds of the check reached the payee designated by the drawer. (*Gotham-Vladimir Adv., Inc.* v. *First Nat. City Bank* (1967) 27 App.Div.2d 190 [277 N.Y.S.2d 719, 722]; 9 C.J.S., Banks and Banking, § 356(c), p. 734; 10 Am.Jur.2d, Banks, § 625, p. 592.) The rationale for the rule is clear as "[L]osses should not be placed upon negligent banks simply because it is a convenient solution to do so or when such action will grant an unwarranted and unearned benefit upon another. The situation must be considered in the light of general principles of law and equity which supplement the provisions of the Uniform Commercial Code." (*Bank of the West* v. *Wes-Con Development Co., Inc.* (1976) 15 Wash.App. 238 [548 P.2d 563, 566]; see Cal. U. Com. Code, § 1103.)

Addressing the situation where a joint payee received proceeds from a check improperly paid by the collecting bank over a forged indorsement, the Washington Court of Appeals relied on that section of the Washington Commercial Code which in pertinent part is identical to California Commercial Code section 3401, subdivision (1). The Washington court noted, "Actual receipt of the proceeds of the check may, therefore, preclude denial of the endorsement's authenticity and assertion of the forgery. If denial of the signature is precluded, then the signature is operative and a collecting bank would not be required to bear any loss from taking a check with a forged endorsement." (*Bank of the West* v. *Wes-Con Development Co., Inc., supra,* 548 P.2d 563, 567.)

On the facts of the instant case, there can be no doubt that the drawer, Permanente, designated Bambic as a joint payee of its original check. More-

over, the following evidence establishes that Bambic received $25,000 from the first check:

A. Permanente's check drawn on Bank of America funds was made out to Bozinovski, Bambic & Moacanin;

B. Bambic testified that the signature on the back of Permanente's check purporting to be his "appears to be mine";

C. A deposit slip dated January 12, 1981, deposited $50,000 into Bambic's trust account;

D. A letter written on Bambic's letterhead to bank officials, which Bambic admits "appears to be" in his handwriting, directed that $25,000 from Bambic's trust account be transferred to his office account; and

E. A deposit slip transferred $25,000 from Bambic's trust account to his office account.

The trial court's task was to distribute the interpleaded funds in the manner intended by the drawer. Thus, the sum that either joint payee, Bambic or Bozinovski, had already received in accordance with the drawer's intent should have been returned to Bank of America in order to preclude the bank's duplicate liability and the payee's unjust enrichment. We conclude, therefore, that the trial court erroneously failed to determine what portion of the drawer's check had been received by either Bambic or Bozinovski and also whether any portion of the funds which may have been received exceeded the intent of the drawer.

The portion of the judgment with regard to the discharge of Permanente and Kaiser pursuant to the June 9, 1982, stipulation re order of discharge, is affirmed as appellants do not question or seek to reverse that portion of the judgment. (*Bellerue* v. *Business Files Institute, Inc.* (1963) 215 Cal.App.2d 383, 385 [30 Cal.Rptr. 232].) In all other respects, the judgment is reversed and the cause remanded for the limited purpose of retrial on the issue of the payment of the funds in accordance with the drawer's intent and for any other necessary proceedings, consistent with the views expressed herein.

Lillie, J., and Fainer, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.