Gary E. THIGPEN, Plaintiff,

v.

ALLSTATE INDEMNITY
COMPANY, Defendant.

Civ. A. No. J90–0432(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 8, 1991.

William P. Featherston, Jr., Ridgeland, Miss., for plaintiff.

Wilburn Hyche, Brandon, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Allstate Indemnity Company (Allstate) for summary judgment, or alternatively for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Gary E. Thigpen has responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties. Based on the undisputed facts of record, the court concludes that defendant's motion should be granted.

Prior to June 1986, Allstate issued a policy of homeowner's insurance to Susan E. Welch and Audie E. Edmonson on a home located in Picayune, Mississippi. Thereafter, Ms. Welch married the plaintiff, Gary Thigpen. In June 1986, the insured dwelling and its contents were destroyed by fire. Ms. Welch made a claim on her homeowner's policy for the loss she sustained as a result of the fire. On July 29, 1986, Allstate issued two checks in payment of her claim. One check was made payable to Audie Edmonson, Susan Thigpen, Gary Thigpen and Magnolia Federal Bank for Savings, as loss payee, in the amount of $92,332.85, representing payment under the policy for the loss of the dwelling. A second check in the amount of

$44,500 was issued to Audie Edmonson, Susan Thigpen and Gary Thigpen for the destroyed contents. When the checks were issued, the Thigpens were separated and Gary Thigpen was living and working in North Carolina. Without his knowledge, Susan Thigpen endorsed Gary Thigpen's names on both checks and deposited them at Magnolia Federal Bank for Savings (Magnolia Federal); Magnolia Federal sent the checks through banking channels to Deposit Guaranty National Bank (Deposit Guaranty) which paid the checks. As loss payee, Magnolia Federal received $50,-824.52 of the mortgage check. Gary Thigpen was not paid any of the proceeds generated by Susan Thigpen's negotiation of the checks, and in fact did not even learn that checks had been issued including him as a co-payee until sometime in 1987.

■ Plaintiff brought the present action against Allstate, Magnolia Federal and Deposit Guaranty under Miss.Code Ann. § 75–3–419(1) for the alleged conversion of the checks which were paid on his forged signature.[1] As damages, he seeks to recover the face value of both checks. Section 75–3–419 provides a cause of action for conversion when an instrument is paid on a forged indorsement:

(1) *An instrument is converted when*

(a) a drawer to whom it is delivered for acceptance refuses to return it on demand; or

(b) any person to whom it is delivered for payment refuses to pay or to return it; or

(c) *it is paid on a forged indorsement.*

(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. *In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument* (emphasis supplied).

Thigpen asserts that by virtue of the facts that the checks were made payable to him and that his signature was forged on the checks, he has an unqualified right of recovery of the face amount of the checks. In its motion, Allstate has advanced a number of grounds on which it claims entitlement to summary judgment. Only one, however, need be addressed. That is, Allstate asserts, and the court concludes, that while there may have been a conversion of the checks, Thigpen has sustained no loss as a result thereof and is thus not entitled to recovery of damages.

Defendant asserts that no Mississippi court has heretofore addressed the issue of whether a co-payee on a check is entitled to recover the entire face value of the check when the instrument is paid over his forged signature. However, the court notes that in *Kaplan v. Deposit Guaranty National Bank,* 192 So.2d 391 (Miss.1967), though a pre–UCC case, the Mississippi Supreme Court concluded that a joint payee's claim for conversion of a check based on payment on an unauthorized signature "depend[ed] ... upon some allegation that the [plaintiffs] owned some proprietary interest in the property alleged to have been converted, as without such an interest, there could be no damage to them." *Kaplan,* 192 So.2d at 395. While the court has located no Mississippi cases on this subject under the Uniform Commercial Code, the court predicts that the state court would not view the issue any differently under the Code. Although section 75–3–419(2) establishes a presumption that the damages recoverable in the case of the payment of an instrument over a forged indorsement are the face amount of the instrument, the prevailing view is that this presumption can be rebutted by proof that the suing payee has sustained no actual loss as a result of the wrongful payment or that his

---

1. Under the Uniform Commercial Code § 3–116(B), codified in Mississippi as Miss.Code Ann. § 75–3–116(B), a basic principle with respect to joint payees is that to transfer or negotiate an instrument made payable to joint payees, all payees must indorse it. Moreover, it has been consistently held that an unauthorized indorsement receives the same treatment as a forged indorsement. *See, e.g., Equitable Life Assurance Society of United States v. Okey,* 812 F.2d 906, 908 (4th Cir.1987); *D & G Equip., Inc. v. First Nat'l Bank of Greencastle,* 764 F.2d 950, 955 (3d Cir.1985).

loss is less than the face amount of the drafts. *See Wymore State Bank v. Johnson Int'l Co.*, 873 F.2d 1082, 1088 (8th Cir.1989) (Nebraska law) (observing rebuttable nature of section 3–419(2) presumption and leaving determination of question as to who suffered losses from check forging scheme for decision on remand); *Lund's, Inc. v. Chem. Bank*, 870 F.2d 840, 853–54 (2d Cir.1989) (New York law) (damages to be determined by extent of payee's interest in check and its proceeds); *D & G Equip. Inc. v. First Nat'l Bank of Greencastle*, 764 F.2d 950, 958 (3d Cir.1985) (Pennsylvania law) (analysis of defense of mitigation of damages to determine harm sustained by aggrieved payee); *Sherrill White Constr., Inc. v. South Carolina Nat'l Bank*, 713 F.2d 1047, 1050 (plaintiff not entitled to recovery of face amount of instrument where defendant shows that converted proceeds were applied to specific debt the proceeds were intended to discharge, i.e., where defendant proves defense of mitigation); *Southern California Permanente Medical Group v. Bozinovski*, 148 Cal.App.3d 503, 196 Cal.Rptr. 150 (Cal.Dist.Ct.App.1983) (bank's liability for conversion does not require bank to duplicate original payment to joint payee to extent that joint payee has received payment in accordance with drawer's intention); *Segal v. First State Bank of Miami*, 432 So.2d 1378, 1380 (Fla.Dist.Ct.App.1983) (bank may defend conversion action on basis that funds were in fact paid to intended recipient); *Bank of the West v. Wes–Con Dev. Co., Inc.*, 15 Wash.App. 238, 548 P.2d 563, 566 (Wash.Ct.App.1976) (payee would be unjustly enriched by award of face amount of checks to extent of payee's actual receipt of funds); *Yeager & Sullivan, Inc. v. Farmers Bank*, 162 Ind.App. 15, 317 N.E.2d 792, 797 (Ind.Ct.App.1972) (under UCC, aggrieved payee must prove amount of actual loss caused by the conversion); *Alabama (State Nat'l Bank of Alabama) v. Sumco Eng'g, Inc.*, 46 Ala.App. 244, 240 So.2d 366, 369 (Ala.Civ.App.1970) (impliedly recognizing that defendant can reduce amount of damages recoverable by showing that aggrieved payee had interest in converted checks worth less than the face value); *Hillsley v. State Bank of Albany*, 24 A.D.2d 28, 263 N.Y.S.2d 578 (N.Y. App.Div.1965), *aff'd*, 18 N.Y.2d 952, 277 N.Y.S.2d 148, 223 N.E.2d 571 (1966) (incumbent on defendant bank to establish that despite conversion, plaintiff, a co-payee, did not sustain damages).

▮ In the case *sub judice*, the proof establishes beyond question that Thigpen had no interest whatsoever in the mortgage check and the only interest he had in the contents check was limited to $1500, far less than the $44,500 face amount of that draft, for which he has admittedly received payment from the defendant banks.[2] Allstate included Gary Thigpen as a co-payee on the two checks since he, having lived in the home as Susan Thigpen's husband, might arguably be an insured under the Allstate policy. However, there is nothing to show that Allstate intended that he have any greater proprietary interest in the proceeds of the checks than his proprietary interest in the insured property. Thigpen has either testified by deposition or admitted in response to discovery requests that he was not living in the home at the time of the fire, he did not own the house or any part thereof, he has never claimed an ownership interest in the house, he did not participate in borrowing the mortgage money to purchase the home, and he did not supply any of the money for the purchase of the home. Susan Thigpen made the decision to buy the house, which she did by utilizing money from her father's trust fund for the downpayment and obtaining a loan from Magnolia Federal for the remainder of the purchase price. Plaintiff testified that since he had no ownership interest in the dwelling, he did now know why his name would have been included on the check for the dwelling loss; he understood that he was not due any money from the mortgage check and he did not expect to receive any insurance funds for the loss

---

2. Magnolia Federal and Deposit Guaranty paid Thigpen $1500 in settlement of his claims in this lawsuit.

of the dwelling. Yet he claims entitlement to recover $92,332.85, the face amount of the check, as damages for conversion of the check. Thigpen similarly claims that he is entitled to recover the face amount of the $44,500 check which was issued by Allstate for the lost contents, even though he admits that the total value of his personal property which was destroyed in the fire was a mere $1500, and even though he has already been paid that amount by Magnolia Federal and Deposit Guaranty for his loss.[3]

■ In the court's opinion, the proper measure of Thigpen's damages is the actual loss which he sustained as a result of the conversion of the checks, which is limited to his proprietary interest in the drafts; to hold otherwise would result in an unwarranted windfall to plaintiff. The plaintiff has sustained no loss whatsoever as a result of his not receiving any of the proceeds of the checks inasmuch as the total of his interest in both checks amounted to a mere $1500 for which he has received payment. Section 75-1-103 of Mississippi's Commercial Code provides that principles of law and equity continue to supplement the provisions of the Code unless displaced by particular code provisions. Included among these equitable principles is the avoidance of unjust enrichment; nothing in section 3-419 could be construed to preclude application of this equitable doctrine in the case at bar. Indeed, the Official Comments to Uniform Commercial Code § 3-419 recite that though "the obligation of any party on the instrument is presumed ... to be worth its face value[,] [e]vidence is admissible to show that for any reason such as ... the existence of a defense the obligation is in fact worth less, or even that it is without value." It is contemplated, therefore, that a payee will not be permitted recovery beyond his interest. In *Wes-*

*Con Development, supra,* the court, considering the damages awardable against a defendant bank under section 3-419, observed that

> losses should not be placed upon negligent banks[4] simply because it is a convenient solution to do so or when such action will grant an unwarranted or unearned benefit upon another. The situation must be considered in light of general principles of law and equity which supplement the provisions of the Uniform Commercial Code.

*WesCon,* 548 P.2d at 566. Similarly, in *Southern California Permanente Medical Group v. Bozinovski,* 148 Cal.App.3d 503, 196 Cal.Rptr. 150 (Ct.App.2d Dist.1983), the court observed that in some circumstances, it would be unjust to hold a defendant liable under section 3-419 for the face amount of the instrument, and concluded that to prevent the defendant's duplicate liability and the payee's unjust enrichment, a co-payee should not receive any greater portion of the funds represented by the checks than was intended by the drawer. 196 Cal.Rptr. at 154-55. *See also Lurz v. Panek,* 172 Ill.App.3d 915, 123 Ill.Dec. 200, 209, 527 N.E.2d 663, 672 (Ill.App.Ct.1988) (to award plaintiff damages in full amount of check would result in unwarranted windfall when proof showed that plaintiff had already received partial recovery of amount represented by check). This case presents a clear circumstance in which an award in the face amount of the converted checks would work an injustice to the defendant by granting to the plaintiff an unearned, and for that matter unexpected, benefit. Summary judgment should, therefore, be entered for Allstate, and accordingly, it is ordered that defendant's motion for summary judgment is granted.

---

3. Plaintiff acknowledges that as loss payee, Magnolia Federal was entitled to and did receive $50,824.52 of the $92,332.85 mortgage check. Thus, to the extent of the $50,824.52 paid to Magnolia Federal, the defense of mitigation clearly applies since this amount was applied to the specific debt the insurance proceeds were intended to discharge. *See Sherrill White Constr., Inc. v. South Carolina Nat'l Bank,* 713 F.2d 1047, 1050-51 (4th Cir.1983). The court is

of the opinion, though, that irrespective of the mitigation defense, plaintiff may have no recovery in this action since he sustained no loss as a result of the conversion of the checks.

4. In this case, the defendant is not a negligent bank, but the drawer, against whom under the facts no negligence has or could be alleged.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.