(April 30, 1991)

■ SEABOARD SURETY COMPANY, Appellant, v CHASE MANHATTAN BANK, N.A., Respondent. (And a Third-Party Action.) —Order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered April 3, 1990, which, *inter alia,* denied plaintiff's motion for summary judgment and granted defendant's cross-motion for summary judgment, is modified, on the law, to deny the cross-motions by defendant and third-party defendant and to reinstate the complaint and otherwise affirmed without costs or disbursements.

In paying the checks herein without payee endorsement, Chase, the drawee bank, breached its contractual obligation with its customer Esty *(Tonelli v Chase Manhattan Bank,* 41 NY2d 667, 669). The Supreme Court found that since the proceeds of the check reached Ms. D'Agostino, the person Esty actually intended to receive them, Esty was precluded from recovery (citing *Gotham-Vladimir Adv. v First Natl. City Bank,* 27 AD2d 190). However, the record before that court did not adequately answer the question of whether Ms. D'Agostino would have actually received the funds, if Chase had *only* paid properly endorsed checks. The record shows Ms. D'Agostino, the petty cash clerk, reconciled cash and vouchers for expenses and presented the reconcilement daily to a

supervisor for approval. When the petty cash fund became low, D'Agostino would cause a check to issue in reimbursement of the fund for all moneys paid out since the previous reimbursement. Each of these checks issued by the computer was to the order of "William Esty Co., Inc.—Petty Cash Only", and was signed by the facsimile signature of Donald P. Martin, the Treasurer and Chief Financial Officer of Esty. After obtaining each check from the computer, D'Agostino was required to deliver it for approval to an assistant controller and then to Martin for his endorsement. She did not follow this procedure for the ten checks in issue and from an aggregate sum of $82,440.72, she converted $68,000 to her own use.

The record further presents the claim by Martin that: "A very important component of the internal accounting controls was the procurement by the petty cash clerk of the Treasurer's endorsement on the back of each check". It is possible from the facts presented that if the first check had been rejected by Chase for lack of the proper endorsement, the whole scheme would have come to light. Thus, at the very least, an issue was raised as to whether Ms. D'Agostino could have successfully managed to convert the proceeds herein, if Chase had insisted on the proper endorsement.

We note that in each of the cases cited by the dissent, the proceeds actually reached the party intended to receive them, not an embezzler.

Thus, in *Gotham-Vladimir Adv. v First Natl. City Bank* (27 AD2d 190, *supra)*, the plaintiff conceded the money was received by the named payee and became part of corporate funds. In *Malcom C. McIsaac, M.D., P. C. v Bank of N. Y.* (74 AD2d 717), a check was made out to one corporate entity for merchandise and endorsed by another. Yet, the evidence showed that the two corporations essentially represented one entity both engaged in one business, at the same location, owned and operated by the same people. Finally, in *Policy Funding Corp. v Kings County Lafayette Trust Co.* (40 AD2d 525, *affd on opn of App Div* 33 NY2d 776), plaintiff sent premium checks, made payable to one insurer, United, to another insurer, International, which stamped the checks with the name of the payee United and deposited them to its own account. The court held that delivery of the checks to International which had been authorized by United to receive them constituted payment to United even if International forged the name of the payee and retained the proceeds. The Court there expressly recognized "plaintiff *sustained no damage* as a result of payment by its bank on the forged indorse-

ments *(Gotham-Vladimir Adv.* v. *First Nat. City Bank,* 27 AD 2d 190)" *(supra,* at 526 [emphasis added]).

In the instant case, Esty did *not* receive the proceeds. Its dishonest employee did. Although the dissent under "black letter" principles of agency law finds that receipt by D'Agostino was receipt by Esty, under the circumstances, Esty did not "receive" the money. Concur—Murphy, P. J., Carro, Kupferman and Asch, JJ.

Wallach, J., dissents in a memorandum as follows: Summary judgment was properly granted the drawee bank, Chase Manhattan Bank, since the proceeds of the ten checks in question actually reached the person intended by the drawer, William Esty Co., Inc., to receive them. That person was Esty itself, which named itself as the payee on the checks and received the proceeds through Ms. D'Agostino, its petty cash clerk, whose authority to deposit and receive cash for the checks had been expressly communicated to the depositary bank, third party defendant Irving Trust Company. Basic principles of agency law instruct that receipt of the proceeds by Ms. D'Agostino constituted receipt by Esty itself; therefore, Chase, as drawee bank, cannot be held responsible for her defalcations despite its failure to adhere to proper banking practices in paying checks that lacked Esty's necessary indorsement *(Policy Funding Corp. v Kings County Lafayette Trust Co.,* 40 AD2d 525, 526 ["So long as (the payee's agent) had at least apparent authority to receive the checks, any wrongdoing by it with the checks was at the risk of (the payee), the party which clothed it with the authority to receive the checks"], *affd on opn of App Div* 33 NY2d 776; *see also, Gotham-Vladimir Adv. v First Natl. City Bank,* 27 AD2d 190; *Malcom C. McIsaac, M.D., P. C. v Bank of N. Y.,* 74 AD2d 717). By issuing checks to its own order drawn on Chase but cashed by Irving, Esty was simply transferring funds from its account with Chase to its account with Irving, a bank deposit and collection transaction which, from the point of view of Chase and Irving, was completed without hitch. That D'Agostino should have then taken for herself a portion of the cash she had in hand, instead of placing it where it belonged in Esty's petty cash box, is only to point up that the cash would have been available for D'Agostino to steal even if the checks had borne Esty's indorsement. As IAS aptly put it in deciding a motion by plaintiff for reargument: "It is as if the petty cash clerk took the money from the till." *Smith Barney, Harris Upham & Co. v Citibank* (162 AD2d 108), recently decided by this court and heavily relied on by plaintiff in

urging a reversal, is distinguishable. There the checks were indorsed by and deposited into accounts of "third-parties", so that the proceeds thereof never reached the persons named by the drawer as the payees.