McMILLIN, C.J.,
for the Court:
¶ 1. Raymond Clark has appealed from a judgment denying his claim to a fund of approximately $12,500 tendered to him by his wife, Evelyn Brown Clark, but subsequently retrieved by her through extraordinary means before she succumbed to terminal cancer. The case was tried to a jury in Hinds County Circuit Court and the jury found that Mrs. Clark’s surviving daughters, Belinda Ritchey and Barbara Lewis, were the rightful owners of the fund. Mr. Clark now claims that he was entitled to a directed verdict in his favor. Alternatively, he urges that the trial court erred in failing to grant his motion in limine to suppress evidence of the deteriorating relationship between him and his terminally ill wife, evidence which he claimed was inadmissible because of its unduly prejudicial nature. He also claims that the trial court erred in failing in various ways to fully instruct the jury as to his theory of the ease and by admitting unqualified expert testimony regarding the possible source of certain alterations to a check representing the $12,500 fund. We find Mr. Clark’s various issues to be without merit and affirm the judgment of the trial court.
I.
Facts
¶ 2. On September 12, 1994, while hospitalized and seriously ill with cancer, Evelyn Clark executed a general power of attorney in favor of her husband of four years, Raymond Clark. At the same time, she executed a separate letter addressed to Magnolia Federal Bank for Savings directing that institution to close all her accounts and issue the funds payable to Mr. Clark. On September 22, 1994, Mr. Clark used $12,500 of the funds withdrawn from Magnolia Federal to have Trustmark National Bank issue a bank check payable solely to his order. The check was kept by him in a safety deposit box. By a method not entirely clear from the record, Mrs. Clark, apparently having second thoughts concerning her actions, obtained possession of the check on November 21, 1994. Somehow she had her name added as an alternate payee on the instrument and negotiated the check at another financial institution. It is undisputed that Mr. Clark had no knowledge of Mrs. Clark’s activities in this regard. Two days later, Mrs. Clark canceled the September power of attorney in favor of her husband, instead executing a new power of attorney in favor of her adult daughter, Barbara Lewis. Mrs. Clark at that time also executed a will leaving all of her property to her two daughters by a previous marriage, Barbara Lewis and Belinda Richey, who are the appellees in this proceeding. Mrs. Clark died a short time thereafter, on February 10,1995.
¶ 3. Mr. Clark claimed that he first learned of the missing check weeks after his wife’s death. He then began legal proceedings to obtain return of the funds represented by that check. Originally, the case involved several of the financial institutions who had some dealings with the funds, but the money was ultimately inter-pled into court where the real contestants for the money became Mrs. Clark’s daughters on the one hand and Mr. Clark on the other.
¶4. Mr. Clark attempted to base his claim on interpretations of various provisions of the Uniform Commercial Code as enacted in Mississippi regarding the proper negotiation of commercial paper. He urged that the unauthorized alteration of the check by Mrs. Clark, or by someone acting at her urging, rendered her possession of the money unlawful. The daughters, on the other hand, sought to base their claim on the underlying legal ownership of the funds represented by the check.
II.
Discussion
¶ 5. We find it unnecessary to deal at any great length with Mr. Clark’s vari *518 ous issues concerning the intricacies of the Uniform Commercial Code’s directives for the proper handling of commercial paper and negotiable instruments. Rather, we think this case is resolved by a determination of the underlying nature of Mr. Clark’s claim to the funds represented by the bank draft. In that context, we find it beyond reasonable dispute that Mr. Clark held the $12,500 fund in the capacity of a fiduciary to his wife under the general power of attorney executed by her. See McKinney v. King, 498 So.2d 387, 388-89 (Miss.1986).
¶ 6. In his brief, Mr. Clark repeatedly urges that the power of attorney executed by his wife on September 12, 1994, has no role in this case since he did not utilize the power of attorney to obtain possession of the Magnolia Federal funds. It is true that the letter to Magnolia Bank directing that institution to turn over all funds previously in Mrs. Clark’s name to Mr. Clark makes no direct reference to the power of attorney; however, it is undisputed that the two documents were executed at the same time, and it strains all common sense to say that the power of attorney and the contemporaneous letter to Magnolia Federal evidenced two unrelated financial transactions. We have no hesitation in concluding that the two simultaneously-executed instruments were a part of a design by Mrs. Clark to put her separately-owned assets under the control of her husband pursuant to the terms of the power of attorney in anticipation of possible future difficulties as she battled against her cancerous condition. It simply defies logic to interpret the facts of this case in any other manner.
¶ 7. Having determined that Mr. Clark’s title to this fund of $12,500 was solely in a fiduciary capacity by virtue of the September power of attorney, we next observe that Mrs. Clark unquestionably canceled that power of attorney on November 23, 1994 by executing an alternate document giving her daughter, Barbara Lewis, a general power of attorney over her assets. There can be no debate that a power of attorney of this sort may be .canceled at any time by the grantor. A designated power of attorney is nothing more than one form of a principal-agency relationship. King, 498 So.2d at 388. Because an agency relationship of this nature is purely consensual, it may be terminated at will by either party. Restatement (Second) of Agency § 118 (1958). Thereafter, the designated attorney in fact under the instrument has one remaining essential duty, which is to promptly return all assets held in his . fiduciary capacity to the grant- or of the power. Id. at § 382, cmt. d.
¶ 8. Therefore, at least as early as November 23, 1994, when Mrs. Clark canceled the power of attorney in favor of Mr. Clark, she became immediately entitled to the return of the $12,500 fund and any other assets held by him under the fiduciary arrangement set out in the power of attorney without regard to the form in which the fund existed, whether cash, a bank deposit account, or some other form of investment.
¶ 9. Conceding that Mrs. Clark employed an unorthodox means of retrieving the money delivered to her husband in a fiduciary capacity, the fact remains that she had at the time an absolute right to demand the return of the money and, in fact, did all things necessary to compel the return of the funds within days of negotiating the altered bank check when she formally canceled the power of attorney that represented Mr. Clark’s sole right to possess the fund.
¶ 10: Even assuming that, prior to formal cancellation of the power of attorney, Mr. Clark enjoyed some technical legal right to compel the return of the funds represented by the bank check to his possession, his right of recovery would exist, once the power of attorney was canceled, solely for the purpose of then delivering the funds to the rightful owner, i.e., Mrs. Clark.
*519 ¶ 11. Because Mrs. Clark recovered the funds herself and because the present ap-pellees claim the funds as successors in title to their deceased mother, what this case consists of, in actuality, is an attempt by Mr. Clark to bring an action in conversion against his former wife for funds in which she held an equitable interest by virtue of the power of attorney and the resulting fiduciary relationship that instrument created. Having asserted no interest in the funds superior to that of Mrs. Clark, Mr. Clark had no legally cognizable claim to the money that could have been asserted against her nor may such a claim now be asserted against those claiming under the now-deceased Mrs. Clark. Without endorsing Mrs. Clark’s methods employed to recover funds held for her in a fiduciary capacity by a husband who had ceased to enjoy her confidence, we nevertheless conclude that Mr. Clark has no standing to pursue a claim that Mrs. Clark wrongfully obtained actual possession of funds that, in equity, belong to her in all events. See Kaplan v. Deposit Guar. Nat’l. Bank, 192 So.2d 391, 395 (Miss.1966); see also Thigpen v. Allstate Indem. Co., 757 F.Supp. 757, 758-59 (S.D.Miss. 1991).
¶ 12. Having decided this case on these fundamental issues, we find it unnecessary to consider those other arguments advanced by Mr. Clark concerning the proper application of the various provisions of the Uniform Commercial Code. Assuming that, as to the bare legal title to the funds, his theory of recovery is correct, we would still be faced with the proposition that his recovery, because of the fiduciary duties imposed upon him by the power of attorney, was for the use and benefit of those very persons who prevailed in this suit. We decline to follow such a circuitous alternate path that would necessarily, in the end, arrive at the same destination.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.